630 So.2d 926 (1993)
STATE of Louisiana,
v.
Robert CARTER, Jr.
No. 93-KA-0537.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
*928 Harry F. Connick, Dist. Atty. of Orleans Parish, Mark D. Pethke, Asst. Dist. Atty., New Orleans, for plaintiff, appellee.
Robert Carter, pro se, defendant, appellant.
Before PLOTKIN, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE:
Defendant, Robert Carter, along with Clarence Bridges, was charged with possession of cocaine with intent to distribute in violation of LSA R.S. 40:967. Carter pleaded not guilty, then changed his plea to guilty and was sentenced to five years at hard labor to run concurrently with any "parole time" he owed. The State filed a multiple bill on November 19, 1990, to which defendant pleaded not guilty on September 17, 1991. On November 20, 1991, defendant moved to quash the multiple bill and later moved to set aside his guilty plea to the cocaine charge. Hearings on the multiple bill and defendant's motions were held on January 16 and 28, 1992. The trial court denied defendant's motions, found him to be a third offender, and sentenced him to twenty years at hard labor. Defendant was granted an out-of-time appeal on November 9, 1992. The record was lodged on March 16, 1993 and was supplemented in June 1993 by defendant's pro se brief.

STATEMENT OF THE FACTS:
On October 24, 1990, defendant pleaded guilty to possession of cocaine with intent to distribute.[1] Before defendant entered his plea, the following discussion took place:
BY THE COURT:
341-614, Robert Carter.
MR. ELLOIE:
Your Honor, at this timewe would like to ask you a question first.
*929 BY THE DEFENDANT:
I'm sorry, Your Honor. Is there any kind of way that you could check through my record and see just what I'm eligible for, due to the multiple bill, before I plead guilty to it?
BY THE COURT:
You're either eligible for 15 or 20. It depends on whether you're a double bill or a triple bill or a quadruple bill. You had the last conviction; that's makes you a double bill. That's what Mr. Elloie explained to you.
MR. ELLOIE:
That's what I explained to him, that at least we know the 87 [1987 conviction]. That makes him at least a double. Now, the 81 and 84 [1981 and 1984 convictions], whether you're a quad is another matter. But he's still not going beyond the 20.
Defendant was sworn and questioned by the court concerning his waiver of constitutional rights and guilty plea form. The court advised defendant of his rights to trial by jury, to appeal upon conviction, to testify on his own behalf and to call witnesses to testify on his behalf, to confront the witnesses who testify against him, and to assert his privilege against self-incrimination. He also advised defendant that this guilty plea to a felony could be used as the basis for a future charge as a multiple offender. The court asked defendant if his plea was coerced, and found a factual basis for the plea of guilty. Defendant's guilty plea was then entered. Following entry of the plea, the following colloquy occurred:
BY THE COURT:
... Let's set this matter for a multiple bill hearing.
BY MS. KRINGAS:
Two weeks from today, Your Honor.
[The tape recording taken of the hearing at this point records the court asking for a date of November 8. Counsel for the defendant said he would be out of town on the 8th. At this point, the transcript picks up the colloquy.]
BY THE COURT:
How about the 19th of November?
BY MR. ELLOIE:
That will be fine, Your Honor.
BY MS. KRINGAS:
That's fine, Your Honor.
BY THE COURT:
Fingerprint the defendant, Kevin, please.
The multiple bill was filed November 19[2] and the hearing on the multiple bill was continued several times either because of the failure to serve defendant, on the motions of the State or defendant, or by the court itself.
On November 20, 1991, defendant moved to quash the multiple bill, initially asserting untimeliness but later arguing that he had pleaded guilty to the 1990 cocaine charge in reliance on a promise by the State not to charge him as an multiple offender under the Louisiana Habitual Offender Law (LSA R.S. 15:529.1). The trial court denied the motion to quash after having reviewed both the transcript and the audiotape of the guilty plea hearing. The trial court concluded that at the time of defendant's guilty plea to the 1990 cocaine charge, it was clearly evident to defendant, his counsel, the trial judge, and the prosecutor that a multiple bill would be filed. The court denied defendant's motion to withdraw his guilty plea.

ERRORS PATENT:
This court's complete review of the record reveals no errors patent.

ASSIGNMENTS OF ERROR NOS. 1-6 AND 8-11: BREACH OF PLEA BARGAIN
In these ten assignments of error, denominated by defendant in his pro se brief and supplemental brief as arguments, defendant contends the State's action in filing an habitual offender charge against him violates a plea bargain agreement. Carter claims that he pleaded guilty to the 1990 cocaine charge upon the prosecutor's representation that Carter would receive a five year sentence and would not be multiple billed. Defendant argues that the pre-plea inquiry concerning his status as a multiple offender cannot be considered a plea negotiation because the *930 prosecutor was not involved in the discussion and because the trial judge had no authority to negotiate a plea bargain. He asserts that after this discussion took place but before he pleaded guilty, the prosecutor told his counsel that no multiple bill would be filed. Carter argues that the alleged plea bargain should be honored or that he should be allowed to withdraw his guilty plea. There is no evidence of such a representation either in the transcript or on the audiotape record of the entire colloquy.
When a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, which can be said to have been a part of the inducement or consideration for the plea, such a promise must be fulfilled. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Redfearn, 441 So.2d 200 (La.1983); State v. Armstead, 599 So.2d 425 (La.App. 4th Cir.1992). Even if there were no plea bargain with the State, if the defendant justifiably believed there were and pleaded guilty in part because of that justifiable belief, the guilty plea was not knowingly made; and, in such a case, the guilty plea must be set aside and the defendant allowed to plead anew. State v. McFarland, 578 So.2d 1014 (La.App. 4th Cir.1991).
After reviewing the transcript and audiotape of the guilty plea hearing, we find no support for defendant's claim that he pleaded guilty based on the State's promise, direct or implied, that he would not be multiple billed. The discussion at the beginning of the hearing about defendant's potential exposure as a multiple offender cannot be construed as giving rise to a justifiable belief that a multiple bill would not be filed. At the close of the guilty plea hearing, in Carter's presence, the trial judge, defense counsel and the prosecutor discussed a mutually convenient date to hold the multiple bill hearing. If the prosecutor had just a short time before promised defendant not to file a multiple bill, then certainly defense counsel would not have agreed to a date to hold a multiple bill hearing. Accordingly, the trial court did not err in denying the motion to quash the multiple bill and the motion to withdraw the guilty plea.

ASSIGNMENT OF ERROR NO. 12: UNREASONABLE DELAY
Defendant argues that the delay of fifteen months between the filing and adjudication of the habitual offender charge was unreasonable and unjustified and violated his right to a speedy trial. Defendant also claims that he had 178 days, based on "good time" credits, left to serve on his sentence at the time of the multiple offender adjudication.
LSA-R.S. 15:529.1D sets no specific time limit for commencement or completion of recidivist proceedings; however, the Louisiana Supreme Court developed a standard requiring that multiple bill proceedings be completed before the defendant serves the sentence which is to be enhanced. In State ex rel. Williams v. Henderson, 289 So.2d 74 (La. 1974), the Court held:
A case must end at some point. Even persons who have been convicted of two or more felonies must be assured, after some passage of time, that the consequences of past criminal acts have been abated. The present interpretation of the time limitation in which to institute the proceeding is certainly adequate to permit proper exercise of the prosecutorial function while doing away with the uncertainty of the consequences to an accused fostered by an open-ended interpretation of the statute. A defendant has a right to a speedy trial. La. Const. Art. 1 § 9 (1921); Sixth Amendment, U.S. Const. The same considerations which underly this constitutional mandate compel a conclusion that upon conviction a defendant is entitled to know the full consequences of the verdict within a reasonable time.... Although the best procedure may be to have a single sentencing after conviction, our statute does not require this.... But it does require at least that the proceeding to enhance sentence be held before an accused has served his sentence. (Id. at 77). (Emphasis added).
The Court revisited the timeliness issue in State v. Broussard, 416 So.2d 109 (La.1982). There, the District Attorney was aware of *931 the defendant's prior record at the time of the defendant's guilty plea, but without justification delayed to file the habitual offender charge until 13 months after sentence, and three months prior to the date defendant would be eligible for parole. The actual adjudication was made after defendant obtained a release on parole. The Court reversed the trial judge's denial of defendant's motion to quash, noting that the proceedings had not been completed before defendant's release on parole, and that the prosecutor offered no justification for his delay in bringing the recidivism charge.
In the case at bar, the State argues the fifteen month delay was justifiable. Unlike the prosecutors in Williams and Broussard, the District Attorney below brought the habitual offender charge only twenty-six days after Carter's guilty plea to the 1990 cocaine charge. The case was continued several times on the motions of both the State and defendant, as well as by the trial court itself. The criminal court docket sheet reflects this.[3]
The contradictory hearing on the recidivism charge was delayed for a variety of reasons. An investigation was undertaken to determine the validity of defendant's claim of breach of a plea bargain. The ad hoc drug court before which the 1990 cocaine case was heard was closed, and the case was re-allotted to Judge Dennis Waldron. Counsel for the defendant caused additional delays in order to accommodate his schedule. At the time he pleaded guilty to the 1990 cocaine charge, Carter knew that his original sentence could be enhanced by up to 20 years. This information was confirmed less than a month later when the prosecutor filed the habitual offender charge. While a delay of fifteen months from the filing of the charge to its disposition is regrettable, we find no prejudice to the defendant. Indeed, concern for his due process rights dictated that the adjudication be delayed in order that his plea bargain claim could be investigated and so that his attorney could appear to represent him. Defendant claims that he was eligible for release on good time some six months after the adjudication, but offered no proof. This claim in without merit. State v. Noel, 585 So.2d 652 (La.App. 4th Cir.1991). Accordingly, these assignments of error are insufficient to warrant granting Carter the relief he seeks.

ASSIGNMENT OF ERROR NO. 13: IDENTITY OF DEFENDANT
In these five assignments of error, defendant complains that the trial court erred in finding him to be a third offender because he was not advised of his rights before admitting *932 to his identity at the multiple bill hearing, his prior convictions were not valid, and the State failed to show that less than five years had elapsed between the 1981 and 1987 convictions.
Turning first to the issue of defendant's admission of identity, the record shows that defendant was not advised of his rights as required by R.S. 15:529.1D(1).[4] Before accepting a defendant's admission that he is a multiple offender, the trial judge must specifically advise the defendant of his right to a formal hearing and to have the State prove its case. State v. Johnson, 432 So.2d 815 (La.1983); State v. Amos, 550 So.2d 272 (La.App. 4th Cir.1989); State v. Vincent, 439 So.2d 1124 (La.App. 4th Cir.1983), writ denied 472 So.2d 913 (La.1985). The trial judge must also advise the defendant of his right to remain silent. Id.
In the Noel case, supra, the court discussed the identity issue in the habitual offender context:
"Because at most multiple offender hearings the only factual issue is whether the defendant is the same individual previously convicted of a felony as alleged in the bill, it is error to accept a stipulation or a plea before advising the defendant of his rights. An admission of identity at such a hearing is the equivalent of a plea of guilty. This principle was clearly enunciated in State v. Desmond, 524 So.2d 147 (La.App. 4th Cir. 1988), where the defendant's admission that he was the same person charged in the multiple bill was accepted by the trial court before informing him of his rights. The court stated:
The trial court must inform the defendant of these rights prior to the defendant's plea on the multiple bill and before the defendant admits that he is the same person as charged in the multiple bill. If a defendant pleads guilty or admits that he is the same person charged in the multiple bill before the trial court informs him of the rights set forth in the R.S. 15:529.1(D), the defendant's conviction and sentence as a multiple offender must be vacated. Id. at 149.
In the present case, the defense stipulated at the multiple bill hearing as to the defendant's identity as being the same person with a prior felony conviction. The trial court did not specifically inform defendant of her constitutional rights prior to accepting this stipulation. Therefore, defendant's conviction and sentence as a multiple offender must be vacated. 585 So.2d at 654-655."
These holdings in guilty plea cases are readily distinguishable from the case at bar. Where, as here, the defendant enters a plea of not guilty and requires the State to prove the habitual offender charge, the court's failure to advise the defendant of his constitutional rights is not error. In State v. Wright, 598 So.2d 1267 (La.App. 4th Cir. 1992), writ denied 604 So.2d 969 (La.1992), defendant stipulated to his identity and the trial court failed to advise him of his rights. This court held the failure to advise the defendant of his rights was not erroneous because the State put on other evidence to prove his earlier convictions and was able to prove defendant's identity by competent evidence. The court concluded that because the defendant did not plead guilty to the multiple bill but was instead adjudicated a multiple *933 offender, he need not be advised of his rights. See also State v. Stemley, 618 So.2d 455 (La.App. 4th Cir.1993), writ denied 623 So.2d 1305 (La.1993).
The present case is similar. The State did not rely solely upon defense counsel's stipulation to Carter's identity. The State introduced other evidence pertaining to the two prior convictions, whereupon the trial court adjudicated defendant a multiple offender.

ASSIGNMENTS OF ERROR NOS. 14, 16, AND 17: THE 1981 AND 1987 GUILTY PLEAS WERE NOT VOLUNTARY
Defendant also claims that the State failed to prove that he knowingly and voluntarily waived his rights in the 1987 and 1981 guilty pleas which were predicates for the multiple bill. As to the 1987 conviction, he claims that the minute entry is erroneous and in conflict with the transcript of the Boykin colloquy, which allegedly fails to show that he waived his rights. As to the 1981 conviction, he asserts that the minute entry failed to show that he was advised of his rights.
For there to be a knowing and intelligent waiver of constitutional rights in conjunction with a guilty plea, a defendant must be informed of his privilege against self-incrimination, the right to a jury trial, and the right to confront his accusers. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
In order to enhance a sentence with a prior guilty plea, the State bears the burden of proving the guilty plea was constitutionally taken. State v. Mike Shelton, 621 So.2d 769 (La.1993).
The Supreme Court in Shelton reviewed the entire jurisprudence regarding the burden of proof in habitual offender proceedings and the recent holding of the United States Supreme Court in Parke v. Raley, ___ U.S. ___, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). In Parke, the court affirmed the "`presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." (Id. ___ U.S. at ___, 113 S.Ct. at 523), and found it appropriate to assign a burden of proof to the defendant who contests the validity of his guilty plea.
The Louisiana Supreme Court in Shelton held:
"In light of the fact that Parke holds Boykin does not require that the entire burden be placed on the prosecution in a recidivism proceeding and because our present system of placing the entire burden on the State fails to give any presumption of regularity to a final conviction used in an habitual offender hearing, we today revise our previous scheme allocating burdens of proof in habitual offender proceedings.
"If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. We note that this new procedure will not only give appropriate significance to the presumption of regularity which attaches to judgments of conviction which have become final, but will also provide an advantage to defendants who were previously under [State v. Lewis, 367 *934 So.2d 1155 (La.1979)] unable to introduce any extra-record evidence and whose guilty pleas were heretofore under [State v. Tucker, 405 So.2d 506 (La.1981) ] found constitutionally valid by mere proof of a minute entry and a guilty plea form. (Footnote omitted). (Id. at 779, 780.)"
The court remanded the case to give the defendant an opportunity to attempt to meet his burden of proof.
In the present case, in support of the 1987 conviction, Case No. 320-616, the State introduced into evidence the transcript of the Boykin colloquy, the minute entry, the bill of information, docket master, and waiver of rights/plea of guilty form. The transcript clearly shows that defendant was informed of his right to a trial by jury, his right to confront his accusers, and his privilege against self-incrimination. Defendant answered in the affirmative when asked if he still desired to plead guilty knowing what rights he waived by pleading guilty. Since the transcript shows that defendant was fully informed of and waived his three Boykin rights, the transcript should be considered "perfect." Hence, the State met its burden of proving that the 1987 guilty plea was voluntarily made.
As to the 1981 guilty plea, Case No. 280-387, the State introduced the bill of information, the plea of guilty form, the docket master, and two minute entries. The minute entry for the guilty plea, entered on July 22, 1981, stated that the trial court questioned defendant regarding his guilty plea and "orally advised him of his legal rights in accordance with BOYKIN [sic]." The plea of guilty form contained defendant's initials beside each of the three Boykin rights which the form stated that defendant was waiving by pleading guilty. Because the State introduced less than a "perfect" transcript it appears that pursuant to Shelton the case should be remanded to give defendant the opportunity to meet his burden of proof under Shelton.

ASSIGNMENT OF ERROR NO. 15: "CLEANSING PERIOD" HAD LAPSED BETWEEN 1981 AND 1987 CONVICTIONS
Defendant contends that his multiple offender adjudication should be vacated because the State failed to demonstrate by prima facie evidence, as required by R.S. 15:529.1F, that five years had not elapsed between the 1981 and 1987 convictions. The guilty plea to the 1981 conviction was entered July 22, 1981, and defendant was sentenced to three years at hard labor. The 1987 guilty plea was based on an offense committed April 14, 1987. There was no evidence presented as to when defendant was discharged on the 1981 conviction. A minute entry dated January 6, 1983, deals with two consecutive six month sentences in a separate case, No. 280-405, which ran concurrently with the three year sentence. According to the minute entry, the sentence in Case No. 280-405 had been satisfied because it ran concurrently with the three year sentence. This minute entry cannot be considered as the requisite prima facie evidence since it does not establish a date of discharge.
Accordingly, defendant's adjudication as a third offender should be vacated, and the case remanded for further proceedings so that defendant can be resentenced as a second offender or be established to be a third offender.[5]

ASSIGNMENT OF ERROR NO. 7: SENTENCE SHOULD RUN CONCURRENTLY WITH DEFENDANT'S OTHER SENTENCES
Defendant complains that the trial court erred in failing to make his sentence concurrent with his other sentences as had been done with his original sentence. He argues that the failure to make the sentence concurrent causes the sentence to be excessive. In its brief, the State agrees with defendant that the sentence should have been concurrent. Therefore, on remand for resentencing the trial court should stipulate that the sentence is to be concurrent with any other sentences.

*935 ASSIGNMENT OF ERROR NO. 18A:[6]1990 PLEA WAS NOT VOLUNTARY; COUNSEL WAS INEFFECTIVE

In this assignment of error, defendant complains that he was not "Boykinized" and was denied effective assistance of counsel on his guilty plea in the 1990 cocaine case. As to the claim that his Boykin rights were violated, defendant does not allege that the trial judge failed to advise him of his right to a jury, his right to confront witnesses, or his privilege against self-incrimination. Instead, he asserts that the trial judge failed to advise him that the inquiry prior to defendant's entering his plea would be used to determine the validity of the guilty plea. We find no basis for this assignment of error either in the facts of this case or in the law. The Boykin standard was met, as the State proved by its submission of a "perfect" transcript of the court proceeding.
Defendant claims that he would not have pleaded guilty but for the advice of his counsel that he would not be multiple billed. In support of this claim, defendant refers to Mr. Elloie's statement at the hearing on the motion to quash expressing the belief that a multiple bill would not be filed. Ordinarily, the issue of ineffective assistance of counsel is more properly addressed in an application for post-conviction relief to be filed initially in the trial court where a full evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984). Nevertheless, in the interest of judicial economy, the issue can be considered on appeal if the record contains sufficient evidence to address the merits of the claim. State v. Seiss, 428 So.2d 444 (La.1983); State v. Haywood, 516 So.2d 196 (La.App. 4th Cir.1987). From a review of the record, it appears that there is not enough evidence in the appellate record to consider this issue. Although the record contains the statement by defense counsel that he believed that defendant would not be multiple billed, this statement was not given under oath or subject to cross-examination. The better course is for this claim to be asserted in post-conviction and post-appeal proceedings where an evidentiary hearing can be held. The matter is thus inappropriate for consideration by this Court at this time.
The defendant's conviction for violation of LSA R.S. 40:967 is affirmed. Defendant's sentence and adjudication as a third offender is vacated and the case remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] Because defendant pleaded guilty, the facts of the offense are not at issue.
[2] The multiple bill was based on two prior convictions, one in 1987 for possession of phencyclidine and the other in 1981 for possession of pentazocine with intent to distribute.
[3] 10/24/90: Carter sentenced to serve five years at hard labor with credit for time served, concurrent with any other parole time he may owe. Set for multiple bill hearing 11/19/90. 11/19/90: State filed multiple bill; set for hearing 12/21/90; defense counsel served in open court.

12/21/90: Reset hearing 1/21/91.
2/21/91: Set rule to show cause 3/8/91. Place Carter on jail list.
3/11/91: Case was remanded to Section "F".
5/29/91: Asst. District Attorney filed set sheet for multiple bill hearing on 6/7/91.
6/7/91: Court reset hearing 7/12/91.
7/12/91: Not called; reset by Court to 7/26/91 as to Carter.
7/26/91: Continued by State to 9/17/91.
9/17/91: Carter appeared with court appointed counsel Wayne Fontenelle for hearing, pleaded not guilty, and hearing was set for 10/1/91.
10/1/91: Continued by the State to 10/18/91.
10/18/91: Carter appeared with counsel; court continued the hearing 10/29/91.
10/30/91: Set for status on 10/31/91.
10/31/91: Continued to 11/4/91.
11/4/91: Defense counsel, Mr. Elloie, not available; continued to 11/6/91.
11/6/91: Multiple bill hearing continued on behalf of defense counsel, Mr. Elloie, until 11/7/91.
11/6/91: Counsel and defendant appeared; on motion of defense, hearing continued to 11/15/91.
11/15/91: Hearing continued 11/20/91; defendant placed on jail list.
11/20/91: Carter with counsel Elloie appeared; defense filed motion to quash which was specially fixed for hearing 12/18/91.
12/12/91: Matter called for Carter; defense counsel failed to appear and matter continued to be refixed for hearing on 1/15/92.
12/18/91: Hearing on motions continued by agreement until 1/15/92.
1/15/92: Hearing on motions continued to 1/16/92; Mr. Elloie failed to appear.
1/23/92: Hearing fixed on multiple bill for 1/28/92.
1/28/92: Carter appeared with counsel Mr. Elloie; defense motion to withdraw guilty plea denied. Defendant adjudged a third offender; sentenced to a term of 20 years at hard labor, credit for time served; original sentence set aside.
[4] R.S. 15:529.1D(1) provides:

D. (1) If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony under the laws of this state, or has been convicted under the laws of any other state, or of the United States, or of any foreign government or country, of a crime, which, if committed in this state would be a felony, the district attorney of the parish in which subsequent conviction was had may file an information accusing the person of a previous conviction. Whereupon the court in which the subsequent conviction was had shall cause the person, whether confined in prison or otherwise, to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law and shall require the offender to say whether the allegations are true. If he denies the allegation of the information or refuses to answer or remains silent, his plea or the fact of his silence shall be entered on the record and the judge shall fix a day to inquire whether the offender has been convicted of a prior felony or felonies, as set forth in the information.
[5] Double jeopardy does not apply to habitual offender proceedings. State v. Langendorfer, 389 So.2d 1271 (La.1980).
[6] This assignment of error is contained in a supplemental brief and was designated as "Argument 18"; however, it is different from the "Argument 18" set forth in the original brief. Hence, it has been designated as Assignment of Error No. 18A.