712 So.2d 139 (1998)
STATE of Louisiana
v.
Louis WARD.
No. 96-KA-1588.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1998.
Rehearing Denied April 15, 1998.
*141 Harry F. Connick, District Attorney of Orleans Parish, Karen Godail, Arena Assistant District Attorney of Orleans Parish, New Orleans, for Appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Appellant.
Before BYRNES, ARMSTRONG and LANDRIEU, JJ.
LANDRIEU, Judge.
On July 13, 1994 a jury found the defendant guilty as charged of purse snatching. The district court denied his motion for new trial on January 19, 1995. On the same date, the State filed a multiple offender bill charging him as a fourth felony offender. On November 29, 1995, the defendant filed a motion to quash the multiple offender bill. The district court denied the motion on January 17, 1996. On January 24, 1996, the defendant admitted to the allegations contained in the multiple offender bill. The district court then sentenced him to serve life imprisonment at hard labor.

FACTS
On December 21, 1993, Delia Wolf and several friends were having dinner at the Cajun Cabin restaurant on Bourbon Street. Two men, one of whom was later identified as the defendant, sat at the next table. Teresa Davis, the restaurant's assistant manager, testified that the two men requested a table by the door. Ms. Wolf testified that she felt the defendant was sitting too close to her, so she decided to wrap her purse, which was hanging on the back of her chair, around her arm. She also testified that, after the waitress asked her for identification, she put her wallet back into her purse and zipped the purse closed. Ms. Wolf stated that the two men at the next table were looking at menus and that they then got up very quickly and walked briskly out of the restaurant. Ms. Davis testified that the two men never placed an order after the waitress approached them two or three times and that she saw them walking very quickly out of the restaurant. She followed them and saw them run down St. Louis Street.
As Ms. Wolf became suspicious, she noticed that her purse was unzipped and that her wallet, which contained credit cards and two or three hundred dollars, was missing. Two of her friends, Paul Saenz and Josh Davidson, pursued the defendant and his cohort, who, Saenz testified, took up a "dead sprint." Upon seeing a police car, Saenz told Officers Loranda Lovell and John Gagliano what had happened. The officers saw the defendant and his unidentified companion on Rampart Street and ordered them to stop. Gagliano placed the defendant under arrest after he was identified by Saenz. Gagliano *142 testified that the defendant stated that he was not going to jail. Lovell pursued the other man into the Iberville Housing Development, but she lost sight of him after she tripped and fell. Ms. Wolf's wallet was never recovered.

DISCUSSION
A review of the record reveals no errors patent.

ASSIGNMENTS OF ERROR NO. 1 (COUNSEL) & NOS. 1 & 4 (PRO SE)
In these assignments of error,[1] the defendant complains the trial court erroneously denied his motion for mistrial, arguing that the prosecutor improperly made references to other crimes evidence and to the defendant's failure to testify. He also complains in his pro se brief that the trial court erred in not holding an evidentiary hearing when a juror allegedly told defense counsel that he intended to vote not guilty until he heard the prosecutor's reference to other crimes evidence. He argues that these errors were not harmless, because no witness saw him either take or dispose of a wallet and no witness found anything belonging to the victim in his possession.
The first complained-of comment occurred during the prosecutor's closing argument when the prosecutor stated the defendant told the officer who arrested him that he was not going "back" to jail. Defense counsel objected by pointing out that the officer testified the defendant said he was not going to jail. The trial court admonished the jurors that they were to remember for themselves what the testimony was and that what they were presently hearing was argument, not fact or evidence. After this admonishment, a bench conference was held, and closing argument resumed.
The defendant argues that this comment should not be deemed an inadvertent misstatement, because the prosecutor did not withdraw the statement. The State counters that the statement was, at most, a very ambiguous reference to other crimes evidence and was too remote to cause any prejudice to the defendant's case. The State further maintains that the jurors were aware of the misquote, because they had heard the officer's testimony and because the judge's instruction to them clarified that they were to consider the testimony and not the argument as evidence.
The trial court did not err in denying the motion for a mistrial, because the comment was simply a misstatement of a witness's testimony and was not a reference to other crimes allegedly committed by the defendant, impermissible under La.Code Crim. Proc. art. 770. The trial court properly admonished the jurors that they were not to consider the attorneys' arguments as evidence.
The second comment of which defendant complains was made by the prosecutor during rebuttal:
Where is this buddy he sat down with? Where is he? All I know is that it's subject No. 2. Ask yourself: who knows who the other man is? Not me and it's not the police. Who knows his identity and where is he today?
The defendant objected on the grounds that he did not have to put on a case and that he did not have to say anything about a different individual. The trial court overruled the objection.
The defendant argues that the prosecutor's comment was an indirect reference to his failure to testify, proscribed by La.Code Crim. Proc. art. 770. The State counters that the comment was intended to focus on the fact that the prosecution's case was uncontradicted and that there were witnesses other than the defendant who could have testified on his behalf. The State further asserts that this argument was made in response to the argument made by defense counsel regarding the State's failure to present the testimony of Josh Davidson.
When there is an indirect reference to the defendant's failure to take the stand and testify, the court determines the remark's intended effect on the jury. State v. Bourque, 622 So.2d 198 (La.1993); State v. Bowman, 95-0667 (La.App. 4th Cir. 7/10/96), *143 677 So.2d 1094, writ denied, 96-2070 (La.1/31/97), 687 So.2d 400. For such an indirect reference to mandate a mistrial, the State must have intended to draw the jury's attention to the defendant's failure to testify. State v. Clay, 612 So.2d 266 (La.App. 4th Cir.1992). If the prosecutor's intention was to emphasize that the State's case was unrebutted and that there were witnesses other than the defendant who could have testified on behalf of the defense but did not, the comment does not constitute an indirect reference to the defendant's failure to testify. State v. Johnson, 541 So.2d 818 (La.1989). But if the defendant was the only witness who could have rebutted the State's case, a reference to the fact that the case was uncontroverted focuses the jury's attention on the defendant's failure to testify. Id. at 822.
The prosecutor's comment did not constitute an indirect reference to the defendant's failure to testify. The comment concerned the absence of the defendant's unidentified companion who did not come forward to testify on the defendant's behalf.
The defendant, pro se, next argues that the trial court should have held an evidentiary hearing with regard to a juror's alleged statement that he would have acquitted the defendant but for the prosecutor's comment during closing argument that the defendant said he was not going "back" to jail.
The trial court did not err by refusing to conduct an evidentiary hearing on the defendant's allegation that a juror would have acquitted him but for the misstatement made by the prosecutor during closing argument. A prosecutor's closing argument is neither "outside influence" nor "extraneous prejudicial information" about which a juror may testify. See La.Code. Evid. art. 606(B). Therefore, an evidentiary hearing was unnecessary. Moreover, as discussed above, the misstatement did not provide a basis for ordering a mistrial.
Accordingly, none of the assignments of error concerning the State's closing argument has merit.

ASSIGNMENTS OF ERROR NO. 2 (COUNSEL) & NO. 3 (PRO SE)
In these assignments of error, the defendant complains the State failed to prove his guilt beyond a reasonable doubt.
The standard for reviewing a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. at 1311.
When circumstantial evidence forms the basis for the conviction, such evidence must exclude every reasonable hypothesis of innocence. La.Rev.Stat. 15:438. The reviewing court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012. This is not a separate test from Jackson v. Virginia, but it is an evidentiary guideline for the jury when considering circumstantial evidence and it facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Addison, 94-2431 (La.App. 4th Cir. 11/30/95), 665 So.2d 1224.
La.Rev.Stat. 14:65.1(A) provides:

*144 Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
In State v. Anderson, 418 So.2d 551 (La. 1982), the Supreme Court upheld a conviction for purse snatching where the victim had placed her purse on the floor between her legs. The victim stated that she felt a vibration, looked down, and saw that her purse was gone. The Court reasoned that "`snatching' does not require an actual face-to-face confrontation and is distinguished from `use of force' and `intimidation' by the statute's very wording." Id. at 552.
Anderson was cited by this court in State v. Capote, 474 So.2d 497 (La.App. 4th Cir. 1985), in which the defendant's conviction for purse snatching was also affirmed. The victim's purse had been removed from the back of her chair, although she had not felt it being taken.
Here, the State presented sufficient circumstantial evidence of defendant's guilt. The evidence established that the defendant had access to Ms. Wolf's purse, which was discovered to have been unzipped just as the defendant and his unidentified cohort hurriedly left the restaurant. The witnesses positively identified the defendant as the man who had been sitting closest to Ms. Wolf and the man whom they had pursued through the French Quarter. Although the wallet was not found on the defendant's person, a rational trier of fact could have reasonably surmised from this evidence that the defendant either had disposed of the wallet or had transferred it to his companion, who successfully eluded capture by the police. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2 (PRO SE)
In this assignment of error, the defendant pro se complains the trial court erred in denying his motion to quash the multiple offender bill because of the excessive delay in holding the multiple offender hearing.
La.Rev.Stat. 15:529.1(D) provides that a defendant may be charged as a multiple offender if, at any time after either conviction or sentence, it appears that a person convicted of a felony has previously been convicted of another felony. Although the statute does not contain a prescriptive period, the Supreme Court, in State v. Broussard, 416 So.2d 109 (La.1982), held that a habitual offender bill must be filed within a reasonable time after the State becomes aware of the defendant's prior felony record. The Court stated that, upon conviction, a defendant was entitled to know the full consequences of the verdict within a reasonable time and, therefore, the proceedings to sentence a defendant as a habitual offender should not be unduly delayed. Id. at 110-11. As noted in State v. Morris, 94-0553 (La. App. 4th Cir. 11/17/94), 645 So.2d 1295, application of the Broussard doctrine is a fact-specific inquiry which depends upon the particular circumstances of each case.
In the present case, the multiple offender bill was filed six months after trial, but it was filed on the same day that defendant's motion for new trial was denied. Under La.Code Crim. Proc. art. 873, a defendant cannot be sentenced until after his motion for new trial is overruled; consequently, this six-month wait in filing the bill was not an unreasonable delay.
Although it was another year before a hearing was held on the multiple offender bill, this additional delay was neither imputable to the State nor unreasonable. Minute entries indicate that the court itself reset the hearing on several occasions, and one of the minute entries parenthetically notes that defendant was in Angola. Another minute entry indicates that a witness was not available. The minute entry for October 3, 1995, reveals that the hearing was reset for the defense. The last continuance, on January 18, 1996, is the only one that was reset at the request of the State. The hearing was held six days later.
In State v. Broussard, 416 So.2d at 111, the multiple offender bill was filed thirteen months after sentencing and three months before the defendant was eligible for parole. The Supreme Court found this delay unreasonable, noting that the prosecutor had had knowledge of the defendant's felony history *145 at the time of sentencing and that the defendant had been sentenced in conformity with a plea agreement.
In State v. Morris, 94-0553 at pp. 3-4, 645 So.2d at 1297, this court found that a delay of five months between the defendant's guilty plea and the holding of the multiple offender hearing was not unreasonable and did not prejudice the defendant. The court reasoned that the State was delayed by having to wait for documents and that the defendant knew he would be charged as a multiple offender when he pleaded guilty.
In State v. Langlois, 96-0084 (La.App. 4th Cir. 5/21/97), 695 So.2d 540, writ granted on other grounds and remanded, 97-1491 (La.11/14/97), 703 So.2d 1281, the defendant, whose first multiple offender adjudication had been vacated, argued that the fifteen- to seventeen-month delay in holding a second multiple offender hearing was unreasonable. The trial court stated that the delay was justified by the unique and distinctive procedural history of the case. This court also found that the delay was justifiable and that the defendant was not prejudiced. We observed that the defendant had not been expecting an early release prior to the delayed multiple offender hearing.
In this case, only a few of the minute entries give any reason for the lag in holding the multiple offender hearing, and no explanation was set forth at the hearing itself. The majority of the continuances apparently were attributable to the trial court itself. The defendant knew on the same day that his motion for new trial was overruled that he was being charged as a fourth felony offender and would be subject to a sentence of life imprisonment. Accordingly, he was not prejudiced by the delay. This assignment of error is without merit.
For the reasons provided above, the defendant's conviction, habitual offender adjudication, and sentence are affirmed.
CONVICTION, HABITUAL OFFENDER ADJUDICATION, AND SENTENCE AFFIRMED
NOTES
[1] The fourth pro se assignment of error is set forth in defendant's second pro se brief.