786 So.2d 876 (2001)
STATE of Louisiana
v.
Robert GRIMES.
No. 2001-K-0576.
Court of Appeal of Louisiana, Fourth Circuit.
May 2, 2001.
*877 Dennis W. Moore, Orleans Indigent Defender Program, New Orleans, Counsel for Defendant-Relator.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge MIRIAM G. WALTZER, Judge MICHAEL E. KIRBY.
BYRNES, Chief Judge.
On April 14, 1999 the State filed a bill of information charging the defendant with simple burglary, a violation of La. R.S. 14:62. On August 23, 1999 a jury found the defendant guilty as charged. On September 9, 1999 the trial court sentenced the defendant to three years at hard labor to run concurrently with any other sentence with credit for time served. The State filed a multiple bill, and the hearing was set for September 17, 1999. The docket master provided by the defendant[1] shows that the hearing was reset to October 18, 1999, November 15, 1999, December 14, 1999, January 28, 2000, February 10, 2000, March 2, 2000, April 12, 2000, May 31, 2000, June 21, 2000, August 10, 2000, August 30, 2000, October 10, 2000, October 30, 2000, November 22, 2000, December 20, 2000, and January 17, 2001. On January 17, 2001 his motion to quash the multiple bill was denied, and the hearing was held. The trial court found the defendant to be a triple offender. On January 23, 2001 the court recalled the original sentence and sentenced the defendant to twelve years at hard labor to be served concurrently to any other sentence and with credit for time served. The defendant noted his intent to file for writs and was given a return date of March 23, 2001.[2] His application was timely filed on March 22, 2001. The docket master indicates *878 that the defendant did not file a motion for appeal of his conviction or sentence as a multiple offender although he has a constitutional right to an appeal.
This writ involves the denial of the defendant's motion to quash the multiple bill. The facts of the case are not relevant.
The defendant argues that the trial court erred by denying the motion to quash the multiple bill hearing and adjudicating him a multiple offender when he had already served twenty-three months of a three year sentence and was out on parole at the time of the hearing. He notes that the State filed the multiple bill on the date that he was sentenced, but then the hearing was reset eighteen times over a sixteen-month time period.[3] The defendant claims that he never requested a continuance, and should not have been sentenced as a multiple offender. He cites State ex rel. Glynn v. Blackburn, 485 So.2d 926, 926 (La.1986), for its holding that enhancement proceedings have to be completed before a defendant has satisfied his sentence on the underlying felony and been discharged from custody for the offense.
The defendant has attached two motions to quash multiple bills, which are undated and not stamped as filed in the district court. One motion merely moves to quash the multiple bill without setting forth any reasons at all; that part of the motion was left blank. The second motion lists as reasons: 1) the State failed to prove that the defendant was previously convicted of any crimes; 2) the State failed to prove that the defendant was properly Boykinized; and 3) the State failed to comply with the provisions of La. R.S. 15:529.1. The defendant does not mention the argument relating to whether the multiple bill hearing was held within a reasonable time.
At the January 17, 2001 hearing[4] Officer Anthony Monaco, the fingerprint expert, testified that the defendant was the same person involved in the predicate offenses. Defense counsel questioned the officer about the number of times he was called to court to testify in this case. Defense counsel noted that he was laying the groundwork as to the unreasonableness of the State going forward with the multiple bill after the passage of so much time. The court noted that the defendant was sentenced on September 9, 1999. Defense counsel asked that the record reflect that the State reset the multiple bill hearing over seventeen times. The State objected and noted that there had "been no factual showing that each of those cotangents [sic] was requested by the State in this case."
Defense counsel argued that the defendant was sentenced on September 9, 1999 to three years.[5] Now over one and one-half years later, after the hearing has been reset in excess of sixteen times, the State sought to have the defendant adjudicated a multiple offender. Counsel stated that the "case law is settled that 15 months is unreasonable." The State informed the court that it billed the defendant as a triple offender, but he had seven prior convictions for burglary dating back to 1975. Defense counsel again stated that the focus was the reasonableness of the delay.
*879 The trial court noted that it had been sixteen months since the defendant was sentenced. The court said that it was impressed with defense counsel's figures until it realized the number of times the defendant had been involved in burglary. The court stated: "Rather than spending his energy getting a job, he spends his energy burglarizing and I have no pity for him." The court found the defendant to be a triple offender.
Defense counsel then informed the court that the defendant had been paroled. The court told counsel to take it all up to this Court. There was some confusion about another case involving a defendant named Robert Grimes charged with a count of simple burglary. The court ultimately asked whether the defendant "was actually paroled out and then rearrested." The defendant said: "That's what I was trying to tell you." The court continued: "No, sir, he gets paroled out and had he come in here through that door, you know good and well I would not have found him a Multiple Offender. But he's in herehe's in here because he committed another burglary." Defense counsel stated: "That's not true." The court went on to say: "He still hasn't learned. He still hasn'tlet's pick a date. I will Sentence [sic] him. I don't want to hear any more on him...." The court asked the defendant if he had ever heard of a job. The defendant asked if the trial court had ever heard of trying to get somebody to hire a convict. As the defendant mumbled something, the court said:
No, let him talk. Let him talk. The odometer, the speedometer is running. Let him talk. He gets out of jail on this one. I give him a decent Sentence and he's out and he commits another burglary? No way. I'm glad I followed my instincts on that one. He doesn't deserve a break. He doesn't deserve a break. He [sic] gotten the breaks and he's messed over.
The court clarified that the defendant's new burglary case was being allotted to Section "F" because this case had been closed. The State informed the trial court that the defendant had burglarized another school. The court then noted that it was "through with" the defendant. The court said: "My instinct led me right on him. Seven burglaries! Eight burglaries, now and then this new one is going to be nine that Section F is going to get."
The multiple offender statute, La. R.S. 15:529.1, does not provide a time period in which a multiple bill should be filed and the matter adjudicated except to note that a defendant may be charged as a multiple offender if "at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted" of another felony. State v. Walker, 98-1410 (La.App. 4 Cir. 5/12/99), 735 So.2d 837. In State v. Broussard, 416 So.2d 109, 110 (La.1982), the Louisiana Supreme Court noted that although La. R.S. 15:529.1 does not provide a time limitation, a multiple bill must be filed within a reasonable time after the State learns that a defendant has a prior felony conviction. The Court stated:
The same considerations which underlie the constitutional right to a speedy trial compel a conclusion that upon conviction a defendant is entitled to know the full consequences of the verdict within a reasonable time. Since the enhancement of penalty provision is incidental to the latest conviction, the proceeding to sentence under the provision should not be unduly delayed.
State v. Walker, at p. 6-7, 735 So.2d at 841, quoting State v. Broussard, 416 So.2d at 110-111. The application of the Broussard doctrine is a fact-specific inquiry depending upon the particular facts and circumstances *880 of each case. State v. McNeal, 99-1265 (La.App. 4 Cir. 6/14/00), 765 So.2d 1113.
As in State v. Bass, 99-0388 (La.App. 4 Cir. 6/14/00), 767 So.2d 772, where the defendant was notified almost immediately after conviction that he would be multiple billed, here the State multiple billed the defendant on September 9, 1999, the date of sentencing. The defendant was on notice that he was being multiple billed. The only issue is whether the hearing was unduly delayed. In Bass the defendant had been released prior to the multiple offender hearing. Bass was convicted on May 17, 1995. On January 11, 1996 he was sentenced pursuant to State v. Dorthey, 623 So.2d 1276 (La.1993), to three years with credit for time served. The State sought writs to this Court, and this Court vacated the sentence and remanded for resentencing. State v. Bass, 96-0168 unpub. (La.App. 4 Cir. 4/15/96). The case was continued many times (almost every time on Bass' motion). On April 25, 1997 Bass moved for new trial on the multiple bill, and the motion was granted. On January 28, 1998, the State filed a second multiple bill. On February 27, 1998, the defendant was released from custody. He was rearrested on May 14, 1998. On June 24, 1998 a new judge sitting ad hoc reversed the ruling on the motion for new trial and found Bass to be a fourth offender. On September 11, 1998, Bass was sentenced to twenty years at hard labor. This Court noted that at the time of his release, this Court had remanded the case to the trial court for resentencing, and the trial court had granted a motion for new trial on the multiple bill, which was still pending. Therefore, Bass was wrongly released. This Court declared that any delays in the multiple offender adjudication were directly attributable to Bass who was granted no less than ten continuances. State v. Bass, 767 So.2d at 772.[6]
In State v. McNeal, pp. 7-8, 765 So.2d at 1117-18, this Court summarized several prior cases dealing with this issue:
In State v. Broussard, 416 So.2d at 111, the multiple bill was filed thirteen months after sentencing and three months before the defendant was eligible for parole. The Supreme Court found that this delay was unreasonable. In State v. Morris, 94-0553, at pp. 3-4, 645 So.2d at 1297 [ (La.App. 4 Cir. 11/17/94), 645 So.2d 1295], this court found that a delay of five months between the defendant's guilty plea and the holding of the multiple bill hearing was not unreasonable and did not prejudice the defendant because the State was delayed by having to wait for documents and because the defendant knew he would be multiple billed when he pleaded guilty.
In State v. Langlois, 96-0084, pp. 7-8 (La.App. 4 Cir. 5/21/97), 695 So.2d 544-545, writ granted in part on other grounds and remanded, 97-1491 (La.11/14/97), 703 So.2d 1281, the defendant, whose first multiple offender adjudication had been vacated, argued that the fifteen to seventeen month delay in holding a second multiple bill hearing was unreasonable. The trial court stated that the delay was justified by the unique and distinctive procedural history of the case. This court also found that the delay was justifiable and that the defendant was not prejudiced. The court noted that the defendant was not expecting an early release prior to the delayed multiple bill hearing.

*881 In State v. Carter, 630 So.2d 926 (La. App. 4 Cir.1993), this court found a fifteen month delay reasonable where both the State and the defendant were granted continuances, where an investigation was undertaken to determine the validity of the defendant's claim of a breach of a plea bargain agreement not to multiple bill him, and where the case was transferred to a different section of court. This court also rejected the defendant's assertion that he was eligible for release on good time some six months after the adjudication because he offered no proof. In State v. Jenkins, 595 So.2d 780 (La.App. 5 Cir.1992), the Fifth Circuit found a delay of nearly two years between the filing of the multiple bill and the holding of the hearing was not unreasonable because the defendant had been notified immediately of the intended filing of the multiple bill and was still incarcerated at the time of the hearing. The court noted that the continuances requested by the State and the defendant were roughly equal in number.
In McNeal, 765 So.2d at 1118, the State filed the multiple bill of information almost two years after defendant's conviction for armed robbery. During that time, the defendant was not sentenced on the original conviction. The defendant was found guilty of armed robbery on September 10, 1996, and the State filed the multiple bill of information on August 17, 1998. The defendant's sentencing was continued three times on joint motion of the State and the defendant. The last joint motion to continue was granted on June 29, 1998. The court reset the matter six other times, but the record did not indicate which party sought to have the matter reset on those other dates. This Court noted that the two-year lapse between defendant's conviction and the filing of the multiple bill was not prejudicial. The defendant was convicted of armed robbery and was incarcerated at the time the multiple bill was filed. Although the defendant had not been sentenced on the original conviction, the minimum sentence under La. R.S. 14:64 would have been five years at hard labor without benefit of probation, parole or suspension of sentence. The defendant would still have been incarcerated at the time the State filed the multiple bill even if he had received the minimum sentence. Additionally, the defendant had other pending charges. This Court concluded that it appeared that the delay was not prejudicial, and the trial court did not err when it denied defendant's motion to quash. Id.
In State v. Walker, 735 So.2d at 839, the defendant entered a plea of guilty to illegal possession of a stolen automobile worth more than $500 on November 14, 1995. He was sentenced on January 16, 1996, to serve five years, but the sentence was suspended, and he was placed on five years of active, supervised probation subject to special conditions. His probation was revoked on October 30, 1997, and he was sentenced to five years at hard labor to run concurrently with any other sentence. The State noted its intention to file a multiple bill at that hearing. On March 16, 1998, the State filed a multiple bill charging the defendant as a second felony offender. He pleaded guilty to the multiple bill, and the trial court found him to be a second felony offender and sentenced him under La. R.S. 15:529.1 to serve five years at hard labor. This Court noted that the State gave the defendant notice at the revocation of his probation that a multiple bill of information would be filed. At the revocation hearing, the defendant was placed in the About Face Program in Orleans Parish Prison, and when he was resentenced as a second offender, he was allowed to continue that program. This Court concluded that the defendant had not been expecting an early release prior *882 to the delayed multiple bill hearing, and he was not prejudiced by the delay. Noting that nothing in the record indicated why the six-month delay occurred, this Court found that the delay was not unreasonable. Id.
In State v. Taylor, 97-0461, p. 3-4 (La. App. 4 Cir. 7/29/98), 719 So.2d 75, the defendant argued that he had served enough time to be eligible for parole or good time release by the time of the multiple offender hearing and should not have been sentenced as a multiple offender. On October 5, 1994 the defendant was sentenced for simple burglary to five years at hard labor, and the State filed a multiple bill. The multiple hearing was continued several times, and it was held on December 28, 1995. On January 19, 1996, the trial court found the defendant to be a third offender. He was sentenced to ten years at hard labor without benefit of parole, probation, or suspension of sentence. This Court noted that the hearing had been continued eleven times. The minute entries indicated that two of the continuances were at the request of the State. The hearing was continued four times due to other trials in progress, and no reason was given for the other five continuances. None of the continuances were at defendant's request. This Court noted that the State gave no reason for the delay; however, the State was never asked to explain or justify the delay when the defendant raised the issue. The State provided no reason for the delay in its brief, but merely argued that defendant was not prejudiced by the delay. This Court noted that as in Carter (discussed above), the defendant offered no proof in support of his assertion that he was close to being released on parole or good time shortly before the multiple bill hearing was held. This Court concluded that after considering the fact that the State filed the multiple bill on the day that the original sentence was imposed, it did not appear that there was an unreasonable delay relating to the multiple bill proceedings. This Court found no merit to the defendant's claim that he should not have been sentenced as a multiple offender. Id.
In State v. Ward, 96-1588 (La.App. 4 Cir. 3/4/98), 712 So.2d 139, the defendant was convicted of purse snatching. Although the multiple bill was filed six months after trial, it was filed on the same day that defendant's motion for new trial was denied. The defendant could not be sentenced until after his motion for new trial was overruled under La.C.Cr.P. art. 873. The additional year before the hearing was held on the multiple offender bill was neither imputable to the State nor unreasonable. This Court noted that the minute entries indicated that the court itself reset the hearing on several occasions, and one of the minute entries parenthetically noted that the defendant was in Angola. Another minute entry indicated that a witness was not available. One minute entry revealed that the hearing was reset for the defense. The last continuance was the only one based on the State's request, and the hearing was held six days later. This Court noted that only a few of the minute entries provided any reason for the time lapse before holding the multiple offender hearing, and no explanation was set forth at the hearing itself. The majority of the continuances apparently were attributable to the trial court itself. The defendant knew on the same day that his motion for new trial was overruled that he was being charged as a fourth felony offender and would be subject to a sentence of life imprisonment. This Court held that the defendant was not prejudiced by the delay. Id.
In State v. Dominick, 94-1368 (La.App. 4 Cir. 4/26/95), 658 So.2d 1, the defendant was charged by bill of information with *883 theft of property valued between one hundred and five hundred dollars. He pleaded guilty on June 23, 1993 and was sentenced to serve two years at hard labor. The State filed a multiple bill. After several continuances of the multiple bill hearing, the defendant was permitted to withdraw his plea. In December 1993, he was tried by a jury, found guilty as charged, and again sentenced to serve two years at hard labor. On February 18, 1994 the defendant was sentenced to serve twenty years at hard labor under La. R.S. 15:529.1. On appeal, the defendant cited State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974)[7] and argued that the trial court erred by sentencing him to an enhanced sentence as a multiple offender after he had been granted good time release and placed on parole eleven days before the resentencing. The State filed a multiple bill of information immediately following the defendant's guilty plea and sentencing. After the defendant was allowed to withdraw his guilty plea, the State filed another multiple bill immediately following the post-trial sentencing. The multiple bill proceeding was conducted the day following sentencing. Because the defendant had been incarcerated pre-trial, his parole release date from the two-year sentence was mid-February of 1994, less than two months after the December 28, 1993 sentencing. This Court stated:
The trial judge was cognizant of this fact when he set the multiple bill adjudication hearing the day after the post-trial sentencing and deferred the sentencing aspect for the parties to submit memoranda. There was never any dilatory action attributable to the State or the trial court in this case relative to the delay in the filing of the multiple bill, the adjudication, or the sentencing.
Further, Dominick, though released on parole, was not yet discharged from custody. "[T]he expiration of a sentence is the date that the defendant is discharged from supervision; that is the discharge date under the sentence imposed." State v. Sherry, 482 So.2d 78, 80 (La.App. 4th Cir.1986). Since Dominick's date of discharge from supervision was February 6, 1995, he was not discharged under his original sentence before he was resentenced.
Finally, whereas Dominick knew that the State intended to multiple bill him at least from the time of the withdrawal of his guilty plea, he could not have reasonably expected that he would be released on the charge without the imposition of an enhanced penalty.
State v. Dominick, 658 So.2d at 2.
In State ex rel. Glynn v. Blackburn, 485 So.2d 926 (La.1986), the defendant had satisfied his two year sentence for simple kidnapping prior to being sentenced as a multiple offender to ten years. The Louisiana Supreme Court vacated the ten-year sentence and ordered the defendant discharged as to that charge. The Court held that "[p]roceedings against a convicted defendant to enhance his sentence under R.S. 15:529.1 must be completed before he has satisfied his sentence on the underlying felony and been discharged from custody for that offense." Id. at 926. The Supreme Court cited State ex rel. Williams v. Henderson, 289 So.2d at 74, where the defendant was sentenced on May 26, 1971 to serve two and one-half years at hard labor. On August 15, 1972 the State filed a multiple bill. Due to the filing of motions and requests for continuances *884 by the defense, the resentencing procedure was delayed. The defendant was discharged from custody on September 20, 1972 and was resentenced on December 21, 1972. The Court held that the "proceeding was not held timely and the State was without power to resentence the defendant." Id. at 77.
Here the defendant was sentenced on September 9, 1999 to three years at hard labor. According to the docket master, the multiple bill hearing was reset seventeen (defendant claims eighteen) times over a sixteen-month period, and the hearing was held on January 17, 2001. The defendant claims that he never requested a continuance and was not responsible for the delays. The docket master entries do not show that he requested continuances. However, there is only one entry (October 30, 2000) that shows that the trial court reset the hearing for the State. The rest of the entries merely provide that the court reset the multiple hearing or that the matter was reset. Thirteen entries do not indicate that the defendant and his counsel were present. On November 22, 2000 the defendant was not present, and the State indicated that it would locate him. Only the entries for October 10, 2000, October 30, 2000, and December 20, 2000 indicate that the defendant and his counsel were present. The defendant did not allege in his motion to quash that the hearing had not been held within a reasonable time or how he was therefore prejudiced.
At the hearing during cross-examination of the fingerprint expert, counsel asked whether the officer had been called to testify on September 17, 1999. When the State objected to the relevance, defense counsel informed the court that he was "laying groundwork dealing with my unreasonableness for them to go forward today." The State objected and stated that there had been no factual showing that it had requested the continuances. At that point counsel did not produce minute entries or other proof to show that the State had deliberately reset the matter repeatedly. Counsel merely began to list the dates that the hearing had been reset, and the State objected that the officer had no first-hand knowledge. The officer then stated that he had been called over on the last prior date to testify and not before. Counsel did not attempt to show that the State had been responsible for the numerous times the matter had been reset or to obtain an explanation of the sixteen-month delay.
The defendant has still not produced the minute entries, which might indicate the reason for the multiple offender hearing being reset seventeen times. He has not attached documentation to show that he was in court with counsel ready for the hearing on those dates other than November 22, 2000 when he was apparently not present. According to the docket master, the State filed its multiple bill on the date of sentencing, September 9, 1999. Unlike Broussard where the multiple bill was not filed for thirteen months, the defendant here was put on notice immediately that he would be sentenced as a multiple offender. Like Ward the docket master entries (minute entries were not provided here) do not provide explanations for the decisions to reset the hearing, but most may be attributable to the trial court. Defense counsel has provided nothing to show the contrary. The defendant does not allege that he suffered prejudice because the hearing was held sixteen months later. He also did not show how he had been prejudiced at the multiple bill/motion to quash hearing. As in Taylor the multiple bill was filed on the day of sentencing, but then well over a year elapsed before the multiple bill hearing was held even though the defendant did not request a continuance *885 and the State gave no reasons for the delay. In Taylor and in this case the State was never asked to explain or justify the delay. The defendant here had not raised the issue in his motion to quash and did not make any showing at the hearing that the State had used dilatory tactics in this case.
As in Dominick the defendant was granted good time release and placed on parole before being sentenced as a multiple offender. In Dominick the defendant relied on State ex rel. Williams v. Henderson, 289 So.2d at 74, to argue that he should not have been sentenced as a multiple offender. Henderson was the basis for State ex rel. Glynn v. Blackburn, 485 So.2d at 926, on which this defendant relies. As in Dominick, this defendant, though released on parole, was not yet discharged from custody because the expiration of a sentence is the date that the defendant is discharged from supervision. This defendant like Dominick mistakenly relies on that Supreme Court holding, which is not controlling when he had not been discharged from supervision prior to the multiple bill hearing. Additionally, counsel did not mention that the defendant was out on parole in the motion to quash and did not inform the trial court until after it had found the defendant to be a multiple offender.
The trial court's reasoning at the hearing may not have been focused directly on the reasonableness of the delay in holding the multiple bill hearing. However, the trial court was aware of the numerous times that the hearing had been reset over the sixteen-month period and the reasons for resetting the hearing. The trial court apparently concluded that the defendant had not been prejudiced by the delay, especially in light of the fact that he had already been re-arrested for another burglary and was back in jail. The defendant has failed to show who requested the continuances of which he complains; he has failed to show that the continuances were not justified; and he has failed to show that he was prejudiced thereby.
For the foregoing reasons, the defendant's writ application is denied.
WRIT DENIED.
NOTES
[1] The defendant does not provide any minute entries.
[2] Note that the return date set by the trial court greatly exceeded the maximum thirty-day period mandated by Uniform Rules-Courts of Appeal-Rule 4-3. However, the defendant filed his writ application by the return date, and it should therefore be considered.
[3] This writer counts seventeen times that the matter was reset.
[4] The caption on the transcript indicates that the case involves two counts under La. R.S. 40:967(B)(1); however, case 406-240 involves a charge of simple burglary and a multiple bill. It appears that there was an error by the court reporter.
[5] Counsel actually noted incorrectly that the defendant had been sentenced to three and one-half years.
[6] However, Bass' fourth offender adjudication was reversed due to the State's lack of sufficient proof as to the predicate offenses. Bass, 767 So.2d at 781.
[7] In that case the defendant was multiple billed nineteen months after the imposition of the underlying charge and resentenced three months after being discharged from the original sentence.