645 So.2d 1295 (1994)
STATE of Louisiana
v.
Kevin MORRIS.
No. 94-KA-0553.
Court of Appeal of Louisiana, Fourth Circuit.
November 17, 1994.
*1296 Harry F. Connick, Dist. Atty. of Orleans Parish, Jack Peebles, Asst. Dist. Atty. of Orleans Parish, New Orleans, for the state.
Frank J. Larre', New Orleans, for defendant.
Before CIACCIO, LOBRANO and PLOTKIN, JJ.
PLOTKIN, Judge.
On March 26, 1993, defendant Kevin Morris pled guilty to aggravated battery, a violation of La.R.S. 14:34 and was sentenced to five years at hard labor, to run concurrently with sentences in 359-068 and 360-221. In addition, the State filed a multiple bill of information pursuant to La.R.S. 15:529.1, the Habitual Offender Law, seeking to have defendant declared a second offender based on an April, 1982 conviction for aggravated battery, also in violation of La.R.S. 14:34. After a hearing, the trial court found the defendant to be a second offender and resentenced him to five years at hard labor, to run concurrently with sentences in cases 359-068 and 360-221.
Defendant appealed, alleging that the trial court violated his constitutional right to a speedy trial by allowing the State to continue the multiple bill hearing and by denying defendant's motion to quash the bill of information. Furthermore, defendant alleged that the trial court erred in its Boykinization of him on the present and/or prior conviction.

ASSIGNMENTS OF ERROR NUMBER ONE AND TWO
Defendant asserts in the first two assignments of error that the trial court violated his Constitutional right to a speedy trial by granting the State's continuance of the multiple bill hearing and by denying defendant's motion to quash the multiple bill of information. For the reasons discussed below, we conclude that these assignments of error lack merit.
The Habitual Offender Law, La.R.S. 15:529.1(D), provides, inter alia, that "if, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of [another] felony," then the defendant may be charged as a multiple offender. Although the statute does not contain a prescriptive period, the Louisiana Supreme Court, in State v. Broussard, 416 So.2d 109 (La.1982), held that a habitual offender bill must be filed "within a reasonable time" after the prosecution becomes aware of the defendant's prior felony record. Id. at 110-11. In Broussard, the District Attorney filed the *1297 habitual offender bill thirteen months after sentencing the defendant, and three months before the defendant was eligible for parole. Moreover, the District Attorney offered no justification for the delay. The Court found the delay to be "unreasonable" and declared that "upon conviction a defendant is entitled to know the full consequences of the verdict within a reasonable time. Since the enhancement of the penalty provision is incidental to the latest conviction, the proceeding to sentence under that provision should not be unduly delayed." Id. at 111.
Application of the Broussard doctrine is a fact-specific inquiry which depends on the particular circumstances of each case. Previously, this court has held that three- and four-month delays were not unreasonable under the circumstances of each case. See State v. Patterson, 459 So.2d 714 (La.App. 4th Cir.1984); State v. Thompson, 539 So.2d 1008 (La.App. 4th Cir.1989).
In the immediate case, defendant pled guilty on March 26, 1993. The multiple bill of information was filed on the same day. The guilty plea waiver form signed by defendant stipulates that the defendant would receive a five year sentence as a multiple offender. The multiple offender hearing was originally scheduled for April 2, 1993, but the defendant was not present and the matter was rescheduled for May 3, 1993. Afterwards, the hearing was continued three times, twice at the request of the State and once as the request of the defendant. Ultimately, the hearing was held on August 9, 1993. The State asserts that it moved for the last continuance because it was waiting for subpoenaed records which had not been produced. Thus, the State was delayed because of the wait for documents. See Patterson, supra. Furthermore, defendant was fully informed when he pled to the instant offense that he would be charged as a multiple offender and would be charged as a multiple offender and would receive the same five year sentence. Therefore, the State's actions did not constitute an unreasonable delay and did not prejudice defendant.

ASSIGNMENT OF ERROR NUMBER THREE
In his third assignment of error, defendant asserts that the trial court erred in its Boykinization of defendant on the present and/or previous conviction.
In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court held that because a guilty plea constitutes a waiver of several constitutional rights, including the privilege against self-incrimination, the right to trial be jury, and the right to confront one's accusers, a trial judge cannot accept a guilty plea without an "affirmative showing that it was intelligent and voluntary." The Court announced that it could not presume a waiver of these rights from a "silent record," but that the prosecution was required to "spread on the record the prerequisites of a valid waiver." Id. at 242, 89 S.Ct. at 1712. In State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), the Louisiana Supreme Court adopted Boykin for all guilty pleas taken after December 8, 1971.
In the instant case, the trial court addressed defendant and advised him of his Constitutional rights as required by Boykin at the March 26, 1993 guilty plea. Therefore, the first part of defendant's third assignment of error is without merit. Defendant additionally argues that the State failed to introduce sufficient proof at the habitual offender hearing that the guilty plea upon which the prior conviction was based was intelligent and voluntary.
Recently, in State v. Shelton, 621 So.2d 769 (La.1993), the Louisiana Supreme Court revised the scheme of allocating burdens of proof in habitual offender proceedings to relieve some of the burden from the prosecution and to allow a presumption of regularity to final convictions used in habitual offender hearings. Shelton provided a tri-partite analysis:
(1) "If the defendant denies the allegations of the bill of information, the burden in on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they *1298 were taken." This determination is made from the entire record.
(2) "If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea."
(3) If the defendant is successful under the second prong, the burden shifts back to the State to prove the constitutionality of the plea. The State may meet its burden in two ways:
(A) The State may present a "perfect" transcript which "reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers."
(B) "If the State introduces anything less than a perfect transcript, for example, a guilty plea form, a minute entry, an `imperfect' transcript, or any combination thereof, the judge must then weight the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights."
Shelton, at 779-780.

APPLICATION OF SHELTON TO THE FACTS
In the present case, the State met their burden under the first prong. At the hearing, the State presented fingerprint evidence and three documentsa minute entry of the sentencing which stated "Defendant Morris... pleaded guilty as charged to the Bill of Information as amended to `Aggravated Battery'," a docket master, and a written waiver of rights/plea of guilty form signed by the defendant and his counsel. In addition, the minute entry contained a "defense motion" which, along with the waiver of rights/plea of guilty form, demonstrates that defendant was represented by counsel at the hearing.
Under the second prong, although the waiver of rights/plea of guilty form was signed by defendant and counsel, but it was not signed by the trial judge. In addition, the docket master entry of the guilty plea does not indicate that defendant was represented by counsel. We will assume, arguendo, that this suffices to present a procedural irregularity and shift the burden back to the State.
The State is unable to avail itself of the first part of the third prong because it is unable to provide a "perfect" transcript. Under the second part, the judge must balance the evidence presented by the State and the defendant. Based on the totality of the evidence, we conclude that the State has submitted sufficient proof that the defendant's prior guilty plea was informed, voluntary, and made with an articulated waiver of his Boykin rights. First, the waiver of rights/plea of guilty form signed on April 21, 1982, by the defendant and counsel clearly articulated all of the constitutional privileges mentioned in Boykin. Second, defendant's counsel's signature on the form reveals that defendant had the benefit of legal representation when he waived his rights. Third, although the judge's signature is not on the form, the defendant signed his name at the bottom of the page under a sentence which reads, "The Judge has addressed me personally as to all of these matters and he has given me the opportunity to make any statement I desire." Thus, defendant made his guilty plea after being fully informed by the judge. Finally, the minute entry, also dated April 21, 1982, corroborates the information on the waiver of rights/plea of guilty form.

CONCLUSION
For the foregoing reasons, the decision of the trial court and the defendant's conviction are affirmed.
AFFIRMED.