765 So.2d 1113 (2000)
STATE of Louisiana
v.
Larry McNEAL.
No. 99-KA-1265.
Court of Appeal of Louisiana, Fourth Circuit.
June 14, 2000.
*1114 Harry F. Connick, District Attorney, Juliet Lee Clark, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff-Appellee.
Menette W. Burns, Louisiana Appellate Project, Covington, LA, Counsel for Defendant-Appellant.
(Court composed of Judge WILLIAM H. BYRNES, III, Judge MIRIAM G. WALTZER, Judge PHILIP C. CIACCIO, Pro Tem.)
BYRNES, Judge.
On November 21, 1995, the defendant, Larry McNeal, was charged with one count of armed robbery in violation of La. R.S. 14:64 and one count of possession of a *1115 firearm by a convicted felon in violation of La. R.S. 14:95.1.[1]
On September 10, 1996, the State severed the firearm possession charge from the armed robbery charge and proceeded to trial on the armed robbery charge. The defendant was found guilty as charged after a jury trial. On August 17, 1998, the State filed a multiple bill of information. The State then nolle prosequied the charge of possession of a firearm by a convicted felon.
The defendant filed a motion to quash the multiple bill which was denied by the trial court. The trial court thereafter adjudicated the defendant to be a second felony offender. On August 20, 1998, the trial court sentenced the defendant to serve one hundred thirty-three years at hard labor without benefit of probation, parole or suspension of sentence. The trial court denied defendant's motion to reconsider sentence on August 21, 1998. The defendant appealed.

STATEMENT OF FACT
On the evening of August 25, 1995, Donyette Williams went to the Casino Lounge with her friend, Shannon, and her sister-in-law, Deidra. They arrived at the lounge at approximately 11:30 p.m. Donyette's husband, Burnell Williams, arrived at the lounge at approximately 12:00 a.m. Donyette saw both Monty Howard and Larry McNeal at the lounge. She spoke with Howard for a short time. She knew both men from school. Howard saw Burnell arrive and told Donyette that Burnell was at the lounge. Howard asked Donyette if Burnell was interested in selling his van. Meanwhile, Shannon got into a fight with another woman. Donyette stopped the fight and decided to take Shannon home. Donyette, Deidra and Irvin Blaze took Shannon home. When Donyette left the lounge, she noticed that Howard and McNeal were standing outside the lounge. After Donyette took Shannon home, she, Deidra and Irvin returned to the lounge. As they approached the lounge, she saw Burnell running down the street towards them. Burnell got into her car and told her that he had been robbed. She then saw McNeal driving their van. They tried to follow the van but were unsuccessful. Donyette went to her mother's house and called the police. Burnell and some others continued to search for the van. About fifteen minutes later, Burnell arrived at Donyette's mother's house. They again called the police. When the police did not respond, Burnell went to the police station and made a report. Approximately an hour later, they learned the van was found in Monty Howard's backyard. When she saw the van, the entire dashboard had been torn up. The stereo and air conditioner had been ripped out.
Irvin Blaze testified that he went to the Casino Lounge with Burnell Williams in the early morning hours of August 26, 1995. The defendants, McNeal and Howard, were both at the lounge. While Blaze was at the lounge, two women began fighting. One of the women was a friend of Donyette Williams. When Donyette decided to take her friend home, he went with them. As Burnell's van was parked in front of Donyette's car, Burnell had to move the van so Donyette could leave. When they returned, they saw Burnell running up the street. Irvin, who was driving Donyette's car, stopped the car. Burnell got into the car and told them that he had been robbed. Irvin and Burnell then went looking for the van. The police were called. When the police did not respond, they went to the police station. The van was eventually found in Howard's backyard. The police arrived on the scene at approximately 6:00 a.m.
Burnell Williams testified that he went to the Casino Lounge with his cousin, Irvin Blaze, in the early morning hours of August 26, 1995. While they were at the *1116 lounge, two women began fighting. Donyette, Burnell's wife, told Burnell she was going to take one of her friends home. Burnell went outside to move his van so his wife could leave. After Donyette left, he went back to the lounge but it was closed. He saw a man, later identified as McNeal, standing near his van. Burnell and his brother-in-law, Eddie, walked to his van. Burnell saw Howard standing in the street near the van. He hit the alarm[2] on his van to open the doors. Eddie entered the passenger side of the vehicle. As he turned to enter the van, he heard someone say, "Let me get the keys out ya." Burnell turned around and saw McNeal holding a gun to his face. Burnell threw the car keys in the air and started running down the street. McNeal went for the keys. Burnell saw his wife returning to the lounge as he ran down the street. He got into the car and told his wife that he had been robbed. They followed the van for a short while but lost it. Donyette went to her mother's house and called the police. Burnell and Irvin continued looking for the van. When they couldn't find the van, they went to Donyette's mother's house. They called the police. When the police did not respond, Burnell went to the police station and reported the theft. Later, Burnell learned the van was found in Howard's backyard. When they found the van, the interior of the van was destroyed. The seats, stereo and air conditioner had been taken out and the dashboard was torn up. Burnell identified McNeal in a photographic lineup and at trial as the person who was armed with the gun.
Officer Wellington Beaulieu conducted the follow-up investigation of the armed robbery. He developed two suspects. The officer prepared two photographic lineups which he presented to Burnell Williams. Williams identified Howard and McNeal in the photographic lineups. Officer Beaulieu thereafter obtained arrest warrants for Howard and McNeal. The officer arrested McNeal at his residence on September 26, 1995. When the officers pulled up at McNeal's residence, there were four men on the front porch. The officers asked the four men to approach them. McNeal did not comply and walked towards the front door of the residence. Officer Norbert Carol apprehended McNeal. A Glock automatic gun with a shoulder holster was seized from McNeal after his arrest. The gun was retrieved from the front room of the house.
Officer Norbert Carol assisted in McNeal's arrest. When the officers approached McNeal at his residence, McNeal attempted to enter the residence. Officer Carol apprehended McNeal between the door and the door frame. When the officer detained the defendant, he observed a handgun and shoulder holster two feet away. The officer noted that the gun was loaded when it was seized.

ERRORS PATENT
A review of the record for errors patent reveals none.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant contends that the evidence is insufficient to support the defendant's conviction for armed robbery.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from *1117 which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
The defendant contends that the State failed to sufficiently prove his identity as the perpetrator. He suggests that Burnell Williams' identification of him as the perpetrator was unreliable.
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court set forth a five-factor test to determine whether an identification was reliable: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and, (5) the length of time between the crime and the confrontation. See also Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
In the present case, Burnell Williams positively identified the defendant in a photographic lineup and at trial as the perpetrator. Mr. Williams testified at trial that he saw the defendant standing near the van immediately prior to the robbery. He also stated that he was face to face with the defendant during the robbery. Mr. Williams had a clear and close up view of the defendant during the robbery. Further, he identified the defendant in a photographic lineup that took place one day after the robbery. Such evidence indicates that Mr. Williams' identification of the defendant as the perpetrator was reliable.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2
The defendant also argues that the trial court erred when it denied defendant's motion to quash the multiple bill of information. The defendant suggests that the multiple bill was untimely filed.
La. R.S. 15:529.1(D) provides that a defendant may be charged as a multiple offender if at any time after either conviction or sentence, it appears that a person convicted of a felony has previously been convicted of another felony. The statute does not contain a prescriptive period; but, in State v. Broussard, 416 So.2d 109 (La.1982), the Supreme Court held that a multiple bill must be filed within a reasonable time after the State becomes aware of the defendant's prior felony record. The court stated that upon conviction, a defendant was entitled to know the full consequences of the verdict within a reasonable time, and proceedings to sentence a defendant as a habitual offender should not be unduly delayed. As stated in State v. Morris, 94-0553 (La.App. 4 Cir. 11/17/94), 645 So.2d 1295, application of the Broussard doctrine is a fact-specific inquiry which depends upon the particular circumstances of each case.
In State v. Broussard, 416 So.2d at 111, the multiple bill was filed thirteen months after sentencing and three months before the defendant was eligible for parole. The Supreme Court found that this delay was unreasonable. In State v. Morris, 94-0553 at pp. 3-4, 645 So.2d at 1297, this court found that a delay of five months between the defendant's guilty plea and the holding of the multiple bill hearing was not unreasonable and did not prejudice the defendant because the State was delayed by having to wait for documents and because the defendant knew he would be multiple billed when he pleaded guilty.
In State v. Langlois, 96-0084 (La.App. 4 Cir. 5/21/97), 695 So.2d 540, writ granted *1118 in part on other grounds and remanded, 97-1491 (La.11/14/97), 703 So.2d 1281, the defendant, whose first multiple offender adjudication had been vacated, argued that the fifteen to seventeen month delay in holding a second multiple bill hearing was unreasonable. The trial court stated that the delay was justified by the unique and distinctive procedural history of the case. This court also found that the delay was justifiable and that the defendant was not prejudiced. The court noted that the defendant was not expecting an early release prior to the delayed multiple bill hearing.
In State v. Carter, 630 So.2d 926 (La. App. 4 Cir.1993), this court found a fifteen month delay reasonable where both the State and the defendant were granted continuances, where an investigation was undertaken to determine the validity of the defendant's claim of a breach of a plea bargain agreement not to multiple bill him, and where the case was transferred to a different section of court. This court also rejected the defendant's assertion that he was eligible for release on good time some six months after the adjudication because he offered no proof. In State v. Jenkins, 595 So.2d 780 (La.App. 5 Cir.1992), the Fifth Circuit found a delay of nearly two years between the filing of the multiple bill and the holding of the hearing was not unreasonable because the defendant had been notified immediately of the intended filing of the multiple bill and was still incarcerated at the time of the hearing. The court noted that the continuances requested by the State and the defendant were roughly equal in number.
In the case at bar, the State filed the multiple bill of information almost two years after defendant's conviction for armed robbery. During that time, the defendant was not sentenced on the original conviction. The defendant was found guilty of armed robbery on September 10, 1996. The State eventually filed the multiple bill of information on August 17, 1998. A review of the record indicates that defendant's sentencing was continued three times on joint motion of the State and the defendant. The last joint motion to continue was granted on June 29, 1998. The court reset the matter six other times. The record does not indicate which party sought to have the matter reset on these other occasions.
While almost two years elapsed between defendant's conviction and the filing of the multiple bill, the delay was not prejudicial. The defendant was convicted of armed robbery and was incarcerated at the time the multiple bill was filed. Although the defendant had not been sentenced on the original conviction prior to the filing of the multiple bill, the minimum sentence under La. R.S. 14:64 would have been five years at hard labor without benefit of probation, parole or suspension of sentence. Thus, even if defendant had been sentenced to the minimum sentence on the original conviction, he would still have been incarcerated at the time the State filed the multiple bill. In addition, the defendant had pending charges of possession of a firearm by a convicted felon and first degree murder against him during this time period. Therefore, it appears that the delay was not prejudicial and the trial court did not err when it denied defendant's motion to quash.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 3
Lastly, the defendant contends that the sentence imposed was unconstitutionally excessive.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment."
A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4 Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing *1119 guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
In the present case, the defendant was convicted of armed robbery. After trial, the State filed a multiple bill alleging defendant to be a second felony offender based upon defendant's prior conviction for manslaughter. The trial court adjudicated the defendant to be a second felony offender and sentenced defendant to one hundred thirty-three years at hard labor without benefit of probation, parole or suspension of sentence. Prior to sentencing defendant, the trial court noted that the defendant had recently been convicted of manslaughter in another case. Thus, in addition to the conviction for armed robbery, the defendant had two convictions for manslaughter. The trial court also stated:
I am familiar with the facts of this armed robbery and I am somewhat familiar with the facts of the underlying manslaughter, as well as the plea to the manslaughter that was entered earlier this week. And there seems to be a pattern Mr. McNeal. When you get around people, two things happen. They get robbed or they get killed Actually three thingsor both. And on two different occasions potentially twelve people could have voted to put you to death or to give you a life sentence. The position the Court is in today is that I cannot sentence you to death and I cannot give you a life sentence. As counsel for the State, as well as your attorney pointed out the minimum since I've already found you to be a second offender is forty-nine and a half and the maximum is 198. I have reviewed the sentencing guidelines under article 894.1. And as to 894.1 A(2), the defendant is in need of correctional treatment or custodial environment that can be provided most effectively by his committed to an institution. I absolutely find that. And I find that a weapon was used. I find thatthat several people could have been injured in this event. And as for potentially mitigating factors I really see none either in the case at hand or in the other cases or in your record in general. And while I feel that the minimum of forty-nine and a half would deprecate from the seriousness of this offense, I find that any more time than what I'm going to sentence you to would be the needless inflection of pain and suffering. So, as a multiple offender, pursuant to provision of 15529.1(sic), I sentence you to 133 years in the custody of the Department of Corrections at hard labor. That's without the benefit of parole, probation or suspension of sentence.
The sentence imposed by the trial court is not unconstitutionally excessive in light of the defendant's criminal history. In addition to the present armed robbery conviction, the defendant pled guilty to two counts of manslaughter. In each case, the defendant had been charged with first degree murder and worked out a plea bargain in which he pled guilty to manslaughter. The trial court was well aware of the defendant's involvement in the armed robbery and the two murders. Further, maximum sentences of 198 years have been upheld on second felony offenders convicted of armed robbery. See State v. Donahue, 408 So.2d 1262 (La.1982); State v. Curtis, 363 So.2d 1375 (La.1978); and State v. Jolla, 337 So.2d 197 (La.1976).
This assignment is without merit.
*1120 Accordingly, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] McNeal's co-defendant, Monty Howard, was charged with armed robbery in the same bill of information. Howard was acquitted after the jury trial on September 10, 1996.
[2] It appears that Burnell was actually referring to his remote keyless entry device.