MAX N. TOBIAS, JR., Judge.
hThe defendant, Anthony J. Richardson, was charged by bill of information on 4 November 2009 with possession of heroin, a violation of La. R.S. 40:966 C(l), and possession of cocaine, a violation of La. R.S. 967 C(2). He filed a request for a preliminary hearing, a bill of particulars, .and motions to suppress the evidence and for discovery. Following a hearing on 5 February 2010 and additional briefing, the trial court denied the motion to suppress. From that denial, Mr. Richardson sought supervisory review of the ruling, which this court denied. State v. Richardson, unpub., 10-0356 (La.App. 4 Cir. 4/1/10).
Mr. Richardson was found guilty as charged by a twelve-person jury on 22 March 2011. He filed motions for post-verdict judgment of acquittal, new trial, and arrest of judgment on 31 March 2011, which were denied on 6 April 2011. On that same day, Mr. Richardson was sentenced to four years at hard labor on each count, to run concurrently, with credit for time served.[1] Also on that same day, the state filed a multiple bill of information, charging the defendant as a fourth offender; a hearing on the multiple bill was set for 16 June 2011. Thereafter, the multiple bill shearing was reset over twenty times.[2] Mr. Richardson concedes that he did not appeal his conviction or sentence.
On 28 February 2013, the defendant filed a motion to quash the multiple offender bill of information, which the state opposed. A second motion to quash was filed on 3 May 2013. The trial court denied the quashal motions oh 18 December 2013 following a hearing.[3]
Thereafter, the state amended the multiple offender bill, charging the defendant as a second offender, to which he admitted his status as a second offender, signing a waiver of rights/plea of guilty form as a multiple offender. Accordingly, the trial court vacated Mr. Richardson’s previous sentence and resentenced him as a second offender to the agreed-upon sentence of nine years at hard labor
Mr. Richardson timely appealed.

*89
FACTS

At trial, New Orleans Police Department Officers Sean Ogden and Christopher Carter testified for the state. Both officers testified that sometime after 9:00 p.m. on 30 October 2009, while patrolling together in an unmarked police vehicle in the 1900 block of Marigny Street in New Orleans, they pulled up behind a truck parked in the center of the street. The officers observed a male on a bicycle was speaking to the driver of the truck through the driver’s window, and the truck remained in the middle of the street for several seconds. According to the officers, when the individual on the bicycle observed the officers, the bicyclist departed, | sheading towards North Prieur Street. They elected to conduct a traffic stop because the truck had been impeding the flow of traffic. The officers activated their vehicle’s lights, and the defendant pulled the truck to the side of the road.
As the officers approached, they observed that three other individuals were in the vehicle. Officer Ogden testified that as he approached the driver’s side, he noticed the defendant leaning forward and appeared to be grabbing something at the floorboard. Officer Carter approached the passenger side of the vehicle. After being instructed by Officer Ogden three times to sit upright and show his hands, the defendant complied. Thereafter, the officers instructed all occupants to exit the vehicle for officer safety.[4]
As the occupants exited the vehicle, Officer Ogden observed a sock on top of a bag lying on the floorboard. Part of the contents of the bag could be seen, and Officer Ogden suspected that the contents of the bag consisted of powder cocaine. He advised Officer Carter of his discovery, and Officer Carter placed the defendant under arrest for possession of cocaine.[5] During the search incident to arrest, Officer Ogden searched the sock, wherein he discovered an additional clear plastic bag containing individual pieces of what he suspected to be crack cocaine and two |4bags of heroin.[6] Officer Ogden testified that he performed four preliminary tests to determine whether the items were powder cocaine, crack cocaine, and heroin, and the tests all came back positive. Officer Ogden further testified that he also issued the defendant a citation for impeding the flow of traffic and having a suspended driver’s license

ERRORS PATENT

A review of the record reveals an error patent. The trial court originally sentenced Mr. Richardson immediately after denying his motion for new trial. La. C.Cr.P. art. 873 states that “[i]f a motion for new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled.” However, we find the error is harmless because the original sentence was vacated when the defendant was adjudicated and sentenced as a multiple offender.

*90
DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

In the first counseled assignment of error, Mr. Richardson argues that the trial judge erred in denying the motion to quash the multiple offender bill.
La.C.Cr.P. art. 15:529.1 D(1)(a) provides that a multiple bill may be filed “at any time, either after conviction or sentence.” According to State v. Muhammad, 03-2991, p. 14 (La.5/25/04), 875 So.2d 45, 55, “[although the statute does not prescribe a time within which the bill must be filed, this court has made a determination that the district attorney must file the habitual offender bill ‘within a | ¡^reasonable time.’ ” (quoting State v. McQueen, 308 So.2d 752, 755 (La.1975)). See also La.C.Cr.P. art. 874 (“Sentence shall be imposed without unreasonable delay.”). The Muhammad Court noted that while “[t]he determination of whether the hearing is held within a reasonable time hinges on the facts and circumstances of the specific case,” an important factor in the reasonableness analysis “requires a determination of when the district attorney acquired the knowledge that defendant is a multiple offender.”[7] Muhammad, p. 14, 875 So.2d at 55.
This court has recognized that in considering whether a delay in holding a multiple bill hearing is reasonable, the four factors articulated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), may be considered, “which are: the length of delay, the reason for the delay, an assertion of the right, and prejudice to the defendant.” State v. Simmons, 13-0312, p. 9 (La.App. 4 Cir. 10/16/13), 126 So.3d 692, 698. This court has further found that “[t]he Louisiana Supreme Court has noted that while these [Barker ] factors are neither definitive nor dispositive in the context of a habitual offender proceeding, they are instructive.” State v. Buckley, 11-0369, pp. 5-6 (La.App. 4 Cir. 12/27/11), 88 So.3d 482, 486 (citing Muhammad, p. 15, 875 So.2d at 55).
In Buckley, this court summarized the procedural history of Muhammad as follows:
In Muhammad, the original multiple offender bill of information was filed on the date of the defendant’s sentencing, which was before he was released from custody. Due to a series of events, including remands following two appeals, the defendant was not finally | ^adjudicated a multiple offender until four months after his sentence completion date. [Muhammad, 032991, p. 16, 875 So.2d at 56]. The issue was whether or not the multiple offender adjudication was timely completed. The Court found that the State did not unduly or unreasonably delay in completing the multiple offender proceedings, noting the “[d]efendant was never released from prison only to have the State, thereafter file enhancement proceedings.” Id. at 17, 875 So.2d at 56. [Emphasis supplied.]
Buckley, p. 6, 88 So.3d at 487
In State v. Burton, 07-1342, unpub. (La. App. 4 Cir. 4/23/08), 2008 WL 8922913, this court found that the trial court erred in adjudicating a defendant as a second felony habitual offender rather than a third felony habitual offender, and remanded the *91 matter to the trial court “to perform the ministerial function of adjudicating Mr. Burton as a third-felony habitual offender” and to sentence him accordingly. Burton, p. 4 (citing State v. Burton, 02-1854, unpub. (La.App. 4 Cir. 2/12/03), 838 So.2d 946). However, the defendant was not actually adjudicated a third felony habitual offender and sentenced accordingly until August 17, 2007, nearly four years after the Louisiana Supreme Court had denied writs in his previous appeal.[8]
Relying upon Muhammad, the defendant argued that his right to a speedy trial and sentencing had been violated by the delay in his adjudication as a third felony habitual offender, noting that he served his seven-year concurrent sentences prior to his 17 August 2007 adjudication as a third felony habitual offender. Burton, 07-1342, p. 5.
|7The Burton Court recognized that the delays in Muhammad were primarily attributable to the defendant’s two appeals rather than any action or delay on the part of the state, while in Burton, Hurricane Katrina was a factor at the two-year mark, causing the matter to remain dormant until this court’s disposition with respect to a pro se writ application decision issued on 29 May 2007. Burton, 07-1342, p. 6. This court found that although “the delay was a lengthy one, including a period attributable to Hurricane Katrina, Mr. Burton was not prejudiced,” as this court’s decision in the previous appeal established that he was a third felony habitual offender, and the version of La. R.S. 15:529.1 A(l)(b)(ii) in effect at the time mandated that the defendant would receive life imprisonment without the benefit of parole, probation, or suspension of sentence. Id. Accordingly, “Mr. Burton could have had no justifiable expectation that he would be released from prison after serving his original seven[-]year concurrent sentences.” Id. This court further held that even if fault could be attributed to the state for its failure to act, “there [was] no evidence that any failure by the State to act was abusive or vindictive,” nor evidence of dilatory tactics or bad faith on the part of the state. Id. Thus, pursuant to Muhammad,[9] we found no reversible error in the trial court’s 17 | ^August 2007 adjudication of Mr. Burton as a third felony habitual offender and the imposition of the mandatory life imprisonment sentence. Id. at p. 8.
*92 Mr. Richardson argues that unlike the defendants in Muhammad and Burton, he did not challenge his conviction or plea and thus did not cause a delay in the multiple offender proceedings in this case.[10] He further notes that he was incarcerated for many of the settings of the trial of the multiple bill, and he provided the court with a current address following his release dates and was therefore amenable to process.
Mr. Richardson contends that his case is analogous to State v. Simmons, supra. In Simmons, the defendant was charged by bill of information with attempted armed robbery on 11 December 2009, and found guilty of same on 6 December 2010. At trial, he testified that he had been convicted of a felony, armed robbery, in Mississippi on 26 February 1997. The defendant was sixteen years of age at the time. On 27 January 2011, the defendant was sentenced to twenty-one months at hard labor with credit for time served. A few days later, the Mississippi Department of Corrections mailed documentation regarding the defendant’s prior felony conviction to the Orleans Parish District Attorney’s Office. Id., pp. 1-4, 126 So.3d at 693-694.
Although the state did not file a habitual offender bill, a multiple bill hearing was set for 30 March 2011, at which time the defendant did not appear in court, |9and the state requested that the hearing be held on 11 April 2011. Thereafter, the hearing was continued on numerous occasions throughout 2011 and 2012. The state filed a multiple offender bill of information on 9 February 2012. On July 15, 2012, the defendant was released from prison after completing the sentence for the underlying charge of attempted simple robbery. Nearly a month later, the state filed another habitual offender bill of information, and a multiple bill hearing was set for 16 October 2012. On that date, a status hearing was scheduled for 31 October 2012, at which time a motion to quash the bill of information was set for hearing on 28 November 2012. Id. The trial court granted the defendant’s motion to quash the multiple bill of information, and the state appealed, arguing that the defendant must show prejudice to defeat a habitual offender charge, relying upon State v. McNeal, 99-1265, p. 9 (La.App. 4 Cir. 6/14/00), 765 So.2d 1113, 1118. “In McNeal, this court found no prejudice in a delay of almost two years between the defendant’s conviction and the State’s filing of the multiple bill.” Simmons, p. 5, 126 So.3d at 696 (footnote omitted). The state also relied upon State v. Buckley, 11-0369, p. 7, 88 So.3d at 487, wherein “this court found no prejudice when a multiple bill hearing was not commenced until nearly three years after sentence.” Id. The state also noted this court’s finding in Buckley that “the State had informed [the defendant] at his original sentencing that it would file the multiple bill,” arguing that the delay was not unreasonable because the defendant was aware of his own previous felony conviction and was not prejudiced by the late filing because the first multiple bill hearing was scheduled approximately four months after he was found guilty. Simmons, p. 5, 126 So.3d at 696 (quoting Buckley, p. 7, 88 So.3d at 487).
| ipThe Simmons court recognized that in Buckley, the defendant was sentenced to twenty years, “making prejudice caused by the delay unlikely.” Id., p. 5, 126 So.3d at 696, n. 8. The court also noted that the Buckley court found that “the multiple bill *93 hearing was continued numerous times on the motions of both the State and the defense, as well as by the court itself.” Id.
The defendant argued that the state handled the matter negligently and “violated both the letter and spirit of La.C.Cr.P. art. 874.” Id. at pp. 7-8, 126 So.3d at 697. The defendant noted that only one of the fifteen continuances was requested by him; the state did not file a habitual offender bill of information until over a year after his admission at trial regarding the previous felony conviction; the state failed to secure his appearance in court fifteen times; and the state “made only halfhearted and perfunctory efforts to ascertain Mr. Simmons’ whereabouts.” Id. at pp. 8-9, 126 So.3d at 698.
The defendant also relied upon State v. Broussard, 416 So.2d 109, 111 (La.1982), wherein the Court held that a thirteen-month delay in filing a habitual offender bill of information was unreasonable. The Simmons Court noted that in Broussard, although the defendant’s prior convictions were obtained in the same parish during the district attorney’s tenure in office and information regarding same was available at the time of the original sentencing, the state, offering no reason for its delay, waited to file a habitual offender bill of information until the defendant served thirteen months of his original sentence and was awaiting parole. Simmons, p. 10, 126 So.3d at 699.
The defendant in Simmons, however, had completed his sentence and been released. Thus, the defendant argued that the facts were more egregious than those in Broussard, and that notice of the prior felony conviction alone did not remedy Inthe prejudice he would suffer if the trial court’s ruling on the motion to quash was reversed, because pursuant to Muhammad, McQueen, and La.C.Cr.P. art. 874, a multiple bill must be filed within a reasonable time after the state becomes aware of a defendant’s prior felony conviction. Simmons, pp. 10-11, 126 So.3d at 699-700.
The Simmons court recognized that in State v. Carter, 630 So.2d 926, 931 (La.App. 4th Cir.1993), this court relied updh Broussard in holding that a fifteen-month delay was unreasonable “when both the State and the defendant were granted continuances, an investigation was undertaken to determine the validity of the defendant’s claim of a breach of a plea bargain agreement not to multiple bill him, and the case was transferred to a different section of court.” Simmons, p. 12, 126 So.3d at 700. The Simmons court also recognized that “[t]he application of the Broussard doctrine is a fact-specific inquiry depending on the particular circumstances of each case.” Id. at pp. 12-13, 126 So.3d 692 (quoting State v. Langlois, 96-0084, pp. 3-4 (La.App. 4 Cir. 5/21/97), 695 So.2d 540, 543).
The court affirmed the trial court’s grant of the defendant’s motion to quash, finding that the facts were similar to Broussard, as the state was put on notice of the defendant’s prior felony conviction when he revealed it at trial, but failed to file a habitual offender bill of information for over a year after learning of the prior conviction. The court also noted that the state failed to secure the defendant’s appearance in court on fifteen occasions despite the fact that he was in custody, and the state had requested nine of the fifteen continuances. Further noting that the state offered no justification for the delay, as was the case in Broussard, and that the multiple bill hearing had not taken place when the defendant was released from prison, “the State’s delay in filing and adjudicating the multiple bill of | ^information against Mr. Simmons was unreasonable” and “unduly prejudicial.” Simmons, p. 14, 126 So.3d at 701.
*94 Mr. Richardson contends that his case is similar to Simmons because despite the fact that he was in state custody, he was not brought to court, which necessitated continuances of the multiple bill hearing that should be attributable to the state for failing to secure his presence.
However, he concedes that in other cases from Louisiana courts, lengthy delays have been found to be reasonable. For example, in State v. Zachary 08-634, p. 4 (La.11/21/08), 995 So.2d 631, 632-633 (Kimball, J., concurring in the writ denial), the Court found that where the delays in holding a multiple bill hearing were five years after the first multiple bill hearing setting and seven years after the filing of the bill of information “were largely a result of the defendant’s exercise of her right to seek to quash the bill of information and the State’s exercise of its right to seek review of adverse trial court rulings with the court of appeal and with this court,” resulted in no due process violation. The Court recognized that “[w]hile the delays in bringing the habitual offender proceedings to a conclusion were unusual, the defendant knew shortly after her conviction that the state would pursue enhanced punishment and the delays stemmed from protracted litigation over a variety of issues, including the sufficiency of the evidence documenting defendant’s conviction in Florida used in the present case to enhance her sentence as a second offender.” Id. at pp. 3-4, 995 So.2d at 632.[11] The Court also found 1 iSthat “the delay in completing the habitual offender adjudication c[ould not] be attributed to bad faith or vindictiveness on the part of the State.” Id., p. 4, 995 So.2d at 632.
Additionally, as noted above, in Buckley, p. 7, 88 So.3d at 487, this court affirmed the trial court’s denial of the defendant’s motion to quash the multiple bill of information even though “the State significantly delayed the filing of the multiple bill of information for purposes of receiving additional documentation,” resulting in a delay of the multiple bill hearing of over two years. Also as noted above, this court in BuHon found that a four-year delay in adjudicating the defendant as a habitual offender was not prejudicial where “the State took no action to cause the delay, did not benefit from the delay, and did not act in bad faith.” Burton, 07-1342, p. 8.[12]
*95 The state notes that Mr. Richardson’s case does not present the scenario that the Louisiana Supreme Court sought to prevent in Muhammad — a defendant is “released from prison only to have the State thereafter file enhancement proceedings.” Muhammad, p. 17, 875 So.2d at 56. In this case, the state submits, 114that the defendant had not satisfied the terms of his sentence or been released from custody. The state calculates that Mr. Richardson’s sentence for the underlying conviction for possession of heroin and possession of cocaine will not be satisfied until 6 April 2015. Accordingly, the state contends that Mr. Richardson has not been prejudiced by the delay in this case.
Additionally, the state argues that the record does not evidence that it unduly or unreasonably delayed instituting the multiple bill proceedings or that it had acted in bad faith or gained an unfair advantage in delaying the proceedings. The state further notes that it only moved for one continuance, on 18 August 2011, as the other continuances were either joint continuances, court continuances, or continuances by the defendant. Finally, the state submits that Mr. Richardson did not lodge an objection to any of the continuances of the multiple bill hearing, nor did he assert his right to a prompt disposition until he filed a motion to quash on 28 February 2013.
In State v. Hall, 13-0453, pp. 11-12 (La.App. 4 Cir. 10/9/13), 127 So.3d 30, 39, this court recognized the standard of review applicable to a trial court’s ruling on a motion to quash is whether a trial court abused its discretion if the trial court makes factual determinations:
[Tjhis court in reviewing a.motion to quash involving solely a legal issue ... applies a de novo standard of review. State v. Guillott, 12-0652, p. 4 (La.App. 4 Cir. 2/20/13), 155 So.3d 551, 553 [2013 WL 633093] (citing State v. Schmolke, 12-0406, pp. 2-4 (La.App. 4 Cir. 1/16/13), 108 So.3d 296, 298-99). In cases involving other types of motions to quash involving factual determinations — such as speedy trial violations and nolle prose-qui dismissal-reinstitution cases — this court applies an abuse of discretion standard. [State v.] M.C., 10-1107 at p. 10 [(La.App. 4 Cir. 2/18/11)], 60 So.3d [1264] at 1270; see also State v. Tran, 12-1219, p. 2 (La.App. 4 Cir. 4/24/13), 115 So.3d 672, 673, n. 3 (explaining that “[i]n reviewing rulings on motions to quash where there are mixed questions of fact as well as law, as here, a trial judge’s ruling on a motion to quash is discretionary and should not be disturbed absent a clear abuse of discretion”); State v. Love, 00-3347, pp. 9-10 (La.5/23/03), 847 So.2d 1198, 1206 (“[because the complementary role of trial courts and appellate courts demands that deference be given to a trial court’s discretionary decision, an appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court’s discretion”).
Applying the Barker factors to this case: The length of the delay between sentencing and the date that Mr. Richardson was adjudicated a multiple offender exceeded two and a half years. The reason for the delay is more attributable to Mr. Richardson than to the state. (The defendant *96 concedes this.[13]) A review of the minute entries evidences that Mr. Richardson requested that the multiple bill hearing be continued on 6 and 15 February 2018, 19 March 2013, 12 April 2013, 23 October 2013, and 25 November 2013.[14] As previously noted, the state only moved for one continuance. On several occasions, while the defendant was in the state’s custody, he was not brought to court for the hearing.[15] However, we find 116that this case is not analogous to Simmons, because in Simmons, the state requested nine of the fifteen continuances, and the state failed to bring the defendant to court on fifteen occasions, despite the fact that the defendant was in the state’s custody. See Simmons, p. 13, 126 So.3d at 701.
Additionally, at the hearing on the motion to quash, the trial court reviewed the minute entries and noted that many of the continuances for the hearing on the multiple bill were attributable to the defendant.[16] The trial court also found that “the fact of the multiple bill being in the record was never a surprise to Mr. Richardson. At the very latest this multiple bill was filed some time shortly after the trial.... Again, there has been no surprise and the thing never got lost for a year and a half or two years.”
With regard to the third Barker factor, the assertion of the right, although the multiple bill hearing was reset numerous times throughout 2011 and 2012, Mr. Richardson did not file a motion to quash until 28 February 2013. Even after filing the motion to quash alleging untimeliness, the defendant moved to continue the hearing on the motion to quash on four occasions after filing the motion.
The fourth Barker factor to consider is the prejudice to the defendant. In his motion to quash, Mr. Richardson averred that he was released from jail 28 October 2011, and on parole through November of 2013. However, in the defendant’s counseled brief, he contends that he was still in jail on the 10 November 2011 hearing date, as well as the 12 and 15 December 2011 hearing dates. The minute entry of 12 December 2011 indicates that the defendant was remanded, and the minute entry for 15 December 2011 indicates that a release was issued. Mr. 117Richardson also *97 contends in his appellate brief that he was again in the state’s custody on 14 December 2012, as the minute entry for that date indicates that he was to be placed on the jail list. However, the minute entries for 6 February 2013, 15 February 2013, and 28 February 2013 indicate that notice was to be sent to the defendant, while the minute entry for 6 March 2013 indicates that the defendant be placed on the jail list. The minute entries for 19 March and 12 April 2013 indicate that the defendant was notified in court. The minute entry for 3 May 2013 evidences that the defendant was not in custody, as the trial court issued an alias capias for his arrest with no bond; after Mr. Richardson appeared in court, he fled the courtroom without permission after defense counsel and the state had a meeting with the trial court.
In any event, it appears that Mr. Richardson was possibly on parole at the time the motion to quash the multiple bill was filed on 28 February 2013.[17] He contends that he suffered prejudice because the state “failed to take any active steps to conduct the hearing until after [he] had been released, had broken his drug habit, and had started a new life.” However, like Muhammad, the multiple bill in this case was timely filed, and “Defendant was never released from prison only to have the State thereafter file enhancement proceedings.” Muhammad, p. 17, 875 So.2d at 56. Additionally, the record does not evidence, nor does Mr. Richardson contend, that the state had acted in bad faith, used dilatory tactics, or was abusive or vindictive.
| ^Furthermore, as in both Zachary, pp. 3-4, 995 So.2d at 632, and Buckley, p. 7, 88 So.3d at 487, the defendant was aware that the state had timely filed a multiple bill, which, as the trial court recognized, was repeatedly reset for hearing. Like Zachary, “[w]hile the delays in bringing the habitual offender proceedings to a conclusion are unusual, defendant knew shortly after [his] conviction that the state would pursue enhanced punishment.” Zachary, pp. 3-4, 995 So.2d at 632.
Although Mr. Richardson had been released and was on parole before the hearing on the multiple bill, the majority of the delays in Simmons were plainly attributable to the state, whereas in this case, the majority of the delays can be attributed to the defendant. Additionally, in Simmons, the state delayed filing the multiple bill for over one year and offered no justification therefor, whereas in this case, the multiple bill was filed on the same day that the defendant’s original sentence was imposed. See Simmons, pp. 13-14, 126 So.3d at 701. Considering the foregoing, we do not find that Mr. Richardson has established that he has been prejudiced by the delay in holding the multiple bill hearing. Accordingly, we find that the trial court did not abuse its discretion in making the factual finding that the defendant contributed to a majority of the delays in bringing the habitual offender proceedings to a conclusion and in denying his motion to quash. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 2

In his second counseled assignment of error, Mr. Richardson contends that both the plea form and the colloquy failed to inform the defendant of the rights he could be waiving by entering into the plea to second offender status, and therefore, should the defendant be denied appellate review on the denial of the motion to *98 quash, the plea was involuntary and constitutionally infirm.
li9In response, the state simply argues that the defendant entered an unqualified plea of guilty as a multiple offender, as evidenced by the plea of guilty form, and submits that the signed plea form and the accompanying colloquy do not evidence that the plea was made subject to the reservation of appellate review. Accordingly, the state argues, because the defendant did not enter his guilty plea pursuant to State v. Crosby, 338 So.2d 584, 588 (La.1976), he waived his right to appellate review of any non-jurisdictional defects.
Mr. Richardson concedes that pursuant to the plea form wherein he admitted to his second offender status, he agreed that he was giving up the right to a multiple offender hearing. He also concedes that he failed to object to the terms of the plea of guilty form. However, he contends, neither the form nor the trial court informed him that as a result of admitting his second offender status, he waived his right to seek review of the grounds for dismissal of the multiple offender proceeding on the grounds that the hearing, adjudication, and sentencing had not taken place timely. Mr. Richardson submits that the absence of the specific waiver of the appeal of the trial court’s ruling on the motion to quash in the plea form and during the colloquy with the trial court evidences that the plea was based upon a belief that an appeal would lie from the ruling on the motion to quash and vitiated the voluntariness of the plea.
The defendant further argues that a plea of guilty to a bill of information contains a specific waiver, while guilty pleas to multiple offender bills do not contain the same specific waiver of appellate rights. He concedes that La. R.S. 15:529.1 does not specifically mandate that a defendant execute a waiver of thej^right to appeal, but submits that the provisions of La. R.S. 15:529.1 D(3)[18] contemplate appeals.
The plea form executed by Mr. Richardson provides that he was “satisfied with [his] attorney and the Court in their efforts to explain the rights [he was] waiving and the consequences of this guilty plea” and that he “underst[oo]d all of the possible legal consequences of pleading guilty.” (Emphasis added.) This assignment of error lacks merit.

PRO SE ASSIGNMENT OF ERROR NUMBER 1

In the defendant’s first pro se assignment of error, he alleges, “aggrieved judgment of conviction entry of La. R.S. 15:529.1 is an issuance of absolute nullity unconstitutional [sic] conflicting La. Const. Art. I. sec. 20 right to humane treatment, at [sic] excessive, cruel, unusual and full right of citizenship restored post state and federal supervision of any conviction for any offense.” As noted above, because Defendant pled to the multiple bill, he waived the right to appeal his adjudication and sentence.

PRO SE ASSIGNMENT OF ERROR NUMBER 2

In Mr. Richardson’s second pro se assignment of error, he asserts, “aggrieved issuance exceeded inferior courts [sic] sub *99 ject matter jurisdiction, not within realm of persuasive discretion violating statutory conference [sic].” He l^does not specify how the court lost jurisdiction over his ease. A review of the record reveals that this argument was not raised at the trial court, and, therefore, is precluded from review on appeal. See La.C.Cr.P. art. 841 A (providing, in part, that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.”).

PRO SE ASSIGNMENT OF ERROR NUMBER 3

In the defendant’s third pro se assignment of error, he states, “aggrieved as herein stated, violative separation of powers La. Const. Art. II sec. 20(1)(2), where judicial official assumed and affects powers of and greater than legislative branch of Louisiana government (28 U.S.C. 2403 ...).” Again, Mr. Richardson sets forth no argument on this claim. A review of the record reveals that this argument was not raised at the trial court, and, therefore, is precluded from review on appeal. See La.C.Cr.P. art. 841.

PRO SE ASSIGNMENT OF ERROR NUMBER 4

Next, Mr. Richardson asserts, “aggrieved alleged violative one or more but not limited to: Const. Art. I, cl. 2, 3, 20, 22, 23, 24, 26.” He does not specify how his conviction and sentence violate these constitutional provisions. A review of the record reveals that this argument was not raised at the trial court, and, therefore, is precluded from review on appeal. See La. C.Cr.P. art. 841.

PRO SE ASSIGNMENT OF ERROR NUMBER 5

In the defendant’s final pro se assignment of error, he asserts, “aggrieved alleged violative and/or the by[-]product of: 18 U.S.C. 4, misprision of a felony; 241 conspiracy; 242 deprivation of rights under the color of law; 871 statutory extortion; 1589 forced labor.” Again, be sets forth no argument on this claim. A preview of the record reveals that this argument was not raised at the trial court, and, therefore, is precluded from review on appeal. See La.C.Cr.P. art. 841.

CONCLUSION

For the foregoing reasons, we find that the trial court did not abuse its discretion in denying Mr. Richardson’s motion to quash the multiple bill of information. The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. A 7 September 2011 minute entry notes that "the record should reflect that on April 6, 2011 the defendant was sentenced to 4 years DOC with credit for time served. That should include concurrent with 473-326 and any other time currently being served.”

. A minute entry for 9 January 2012 indicates that the state filed another multiple bill on that day.

. Also at the hearing, the trial court remarked that as a fourth offender, Mr. Richardson faced a sentencing range of twenty years to life and suggested that the parties reach an agreement.

. None of the other occupants of the vehicle was questioned or arrested, and all were released.

. Craig Carey, a witness to the arrest of the defendant, testified that he was picking up his girlfriend on 30 October 2009 at approximately 9:30 or 10:00 p.m. Edward Gai, a licensed private investigator hired by counsel for the defense, testified regarding photographs he had taken of the defendant’s truck while it was on Marigny Street.

. Officer Ogden identified the contraband recovered from the vehicle, which was admitted as evidence. Photographs of the vehicle were also admitted. The state’s criminalist's report which evidenced that all substances tested positive for either heroin or cocaine was also received.

. The Muhammad Court also acknowledged that "[t]he court in State ex rel. Williams v. Henderson [289 So.2d 74 (La.1974)], established a bright line rule that superimposed a requirement for completion of the proceedings not mentioned in [La.C.Cr.P. art. 15:529.1]” and thereby overruled State ex rel. Williams v. Henderson, 289 So.2d 74 (La.1974), to the extent it established such a bright line rule. Muhammad, pp. 15-17, 875 So.2d at 55-56.

. The Burton Court noted that it was not disputed that the original habitual offender bill of information was timely filed, and that the state did not have to prove that the defendant was a third felony habitual offender because the court already made that determination in the previous appeal. Burton, 07-1342, p. 5.

. Notably, with regard to Mr. Burton's reliance upon La.C.Cr.P. art. 874 and his argument that the Muhammad Court did not consider whether allowing the district attorney such wide discretion violated the article, the Burton Court found:
In [State v.] McQueen [308 So.2d 752 (La.1975)], the court held, in a case involving a habitual offender proceeding commenced three years and eight months after the defendant’s conviction, but before the completion of his sentence for the underlying offense, that La.C.Cr.P. 874 controlled because a habitual offender proceeding deals only with the sentencing of a defendant. In Muhamm[a]d, while the Court did not explicitly overrule or disagree with its prior holding in McQueen, and in fact cited McQueen, it did not dispose of the issue presented by Muhamm[a]d by relying on La.C.Cr.P. art. 874, when the facts were essentially the same as Muhamm[a]d, except for the defendant's completion of his sentence in Muhamm[a]d. It is obvious that in Muhamm[a]d the court moved beyond McQueen and its holding that La. C.Cr.P. art. 874 controls the timing of habitual offender proceedings. [Emphasis supplied.]
Burton, 07-1342, p. 8.

. We note that the Burton Court found that “[i]t is clear that the delay [in the defendant’s habitual offender adjudication] was not due to any fault or action by Mr. Burton.” Burton, 071342, p. 6.

. The unusual circumstances in Zachaiy resulted from the defendant's motion to quash the original multiple bill, arguing that her nolo contendere plea in Florida was void of evidence that she knowingly and voluntarily waived her rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The state was unable to obtain a copy of the plea colloquy, and the trial court declined to adjudicate the defendant as a habitual offender. After sentencing, the state located a copy of the plea colloquy and moved to reopen the multiple bill proceedings, but the trial court denied the motion. The First Circuit granted the state’s writ application and remanded the matter for a multiple bill hearing. Even after holding a multiple bill hearing, however, the trial court found that the state's evidence was insufficient and quashed the multiple bill. The First Circuit denied the state’s writ application, but the Louisiana Supreme Court granted writs, reversed, and remanded. On remand, the First Circuit reversed the trial court's grant of the second motion to quash and remanded the matter for a multiple bill hearing. The defendant filed a third motion to quash, and after a hearing, the trial court found the defendant to be a second-felony habitual offender. In the interim, the defendant had secured her release on parole. The trial court subsequently sentenced the defendant to twenty years at hard labor, and the defendant appealed. The First Circuit affirmed, and the Louisiana Supreme Court granted the writ application.

. In a case that predated Muhammad, State v. Morris, 94-0553, pp. 2-3 (La.App. 4 Cir. 11/17/94), 645 So.2d 1295, 1297, this court found that a five-month delay was not unreasonable and did not prejudice the defendant because the state was waiting for subpoenaed *95 records, and "defendant was fully informed when he pled to the instant offense that he would be charged as a multiple offender.” See also State v. McNeal, p. 9, 765 So.2d at 1118 (two-year delay between the defendant's conviction and the filing of the multiple bill held to be not prejudicial where the defendant was still incarcerated on the original conviction at the time the multiple bill was filed).

. The defendant asserts that "the record reflects that Mr. Richardson’s case was actually closed at one time, reflecting a desire not to follow through with the prosecution.” He is referring to the 7 September 2011 minute entry indicating that the case was closed for the defendant. However, a review of the next minute entry, dated 14 October 2011 contains the following notation: " * * * * DISREGARD ANY MENTION OF THIS MATTER BEING CLOSED.* * * * ”

. Additionally, a review of the minute entry for 3 May 2013 indicates that the defendant initially failed to appear, but after the court issued an alias capias with no bond, he appeared only to flee the courtroom without permission after defense counsel and the state had a meeting with the court. Also, on 6 January 2012, the multiple bill hearing was continued because counsel for the defendant filed a motion to withdraw.

. A review of the minute entries evidences that dates on which the multiple bill hearing was set and the defendant did not appear were 14 October 2011, 14 December 2012, 25 September 2013, and 14 November 2013. On 15 December 2011, Mr. Richardson did not appear, but his counsel waived his presence. On 6 January 2012, the date that the defendant provided his address to the court, the matter was continued without date. On 15 January 2013, the defendant did not appear, but the matter was continued by the trial court because the judge was ill.

. The trial court stated, "one can not state that the multiple bill itself was out of sight, out of mind, because he kept getting set on the docket.”

. A review of the minute entries also evidences that a hearing on a rule to show cause why the defendant’s "probation” should not be revoked was set for 25 September 2013. He was in jail from 25 July 2013 through the date of the multiple bill hearing on 18 December 2013.

. La. R.S. 15:529.1 D(3) provides:
When the judge finds that he has been convicted of a prior felony or felonies, or if he acknowledges or confesses in open court, after being duly cautioned as to his rights, that he has been so convicted, the court shall sentence him to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed, deducting from the new sentence the time actually served under the sentence so vacated. The court shall provide written reasons for its determination. Either party may seek review of an adverse ruling.